Kenneth Russell NELSON, Appellant,

v.

Bessie Mae NELSON, Appellee.

No. 11–04–00161–CV.

Court of Appeals of Texas,
Eastland.

March 23, 2006.

Pene S. Ferguson, The Ferguson Law Firm, Marfa, Amy P. Bryan, Fraser, Wilson & Bryan, P.C., Stephenville, for appellant.

Roy B. Ferguson, The Ferguson Law Firm, Marfa, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is an appeal from a division of property incident to divorce. In seven issues, Kenneth Russell Nelson, appellant, challenges the trial court's division of the community estate and its economic reimbursement and economic contribution awards. We affirm in part and reverse and remand in part.

### Background Facts

The parties were married on April 9, 1995. Prior to their marriage, appellant purchased five acres of land from his parents. He still owed them $8,000 on the purchase price when he married appellee, Bessie Mae Nelson. Appellee owned a home in Stephenville. She sold her house prior to the marriage and realized approximately $17,500. She deposited this money into appellant's checking account.

The parties built a home on appellant's five-acre tract. Construction started several months before the marriage. The parties did most of the work themselves and, prior to their marriage, spent $16,616.51 from appellee's house sale on construction costs. The house was substantially complete at the time of the marriage, needing only interior finishing work. The parties spent approximately $5,600 in community funds to complete the house.

Appellee did not learn until after the wedding that her husband still owed his parents money for his land. They ultimately paid his parents $2,000 in full satisfaction of that debt. During their marriage, the parties also purchased a 12.03–acre tract adjacent to the original five-acre tract from appellant's parents.

The trial court granted the parties a divorce. It awarded each an undivided one-half interest in the 12.03–acre tract purchased during their marriage and confirmed that the five-acre tract and improvements were appellant's separate property. The court found that the community estate had a claim for an economic contribution of $18,600 with respect to the five-acre tract and that appellee's separate estate had a reimbursement claim of $16,600. Appellee received an excess allocation of community property of $11,000. After offsetting this against appellee's reimbursement claim and her portion of the economic contribution claim, the court awarded appellee $14,800 payable by appellant and ordered him to sign a promissory note to appellee for this amount, secured by a lien on his five-acre tract. Finally, the court conditionally appointed a receiver to sell the 12.03–acre tract.

### Issues

Appellant contends the trial court erred by awarding a claim for economic contribution for the payment of his debt to his parents, by conditionally ordering the ap-

pointment of a receiver to sell the parties' community property, by characterizing the $16,616.51 spent from the net proceeds of appellee's home sale as appellee's separate property, by finding that appellee was entitled to reimbursement of those funds, by finding that the community estate was entitled to economic contribution for capital improvements to appellant's separate property, and by placing a lien on appellant's separate property to ensure a just and right division of assets and liabilities of the marriage.

## Discussion

■ The trial court has broad discretion when dividing the marital estate at divorce. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). We may reverse that division only if the trial court clearly abused its discretion and if the error materially affects the court's just and right division of the property. *Jacobs v. Jacobs,* 687 S.W.2d 731, 732–33 (Tex.1985). Under an abuse of discretion standard, legal and factual sufficiency challenges are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

### *Economic Contribution for the Repayment of Appellant's Debt to His Parents.*

■ Appellant contends the trial court erred by awarding a claim for economic contribution for the payment of appellant's debt to his parents because that debt was not secured by a lien. Economic contribution is a statutory right of reimbursement for contributions by one marital estate to another. TEX. FAM.CODE ANN. § 3.402 (Vernon Supp.2005) provides six instances in which an economic contribution claim may be created. These include the reduction of the principal amount of a prenuptial

debt secured by a lien on property owned before the marriage. Section 3.402(a)(1).

The parties do not dispute that, when they married, appellant owed his parents $8,000 for the five-acre tract and that this debt was satisfied during their marriage for $2,000. The only dispute is whether the statutory-required lien existed. The Family Code does not define "lien" or "debt secured by lien," and neither party cites any authority for what is required.

We turn to other Texas statutes for guidance. TEX. BUS. & COM.CODE ANN. § 24.002(8) (Vernon 2002) defines "[l]ien" as a "charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien." The statute defines "[v]alid lien" as a "lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." TEX. BUS. & COM. CODE ANN. § 24.002(13) (Vernon 2002). TEX. BUS. & COM.CODE ANN. § 9.102(52) (Vernon Supp.2005) defines "[l]ien creditor" to include "a creditor that has acquired a lien on the property involved by attachment, levy, or the like; an assignee for benefit of creditors from the time of assignment." The statute defines "[s]ecured party" to include "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding." TEX. BUS. & COM. CODE ANN. § 9.102(73) (Vernon Supp.2005).

■■ These statutes make clear that a "lien" requires more than an obligation to repay a debt. Rather, it requires some instrument, agreement, or act giving one creditor superior rights to collateral over all other unsecured creditors or creditors with a subsequently obtained judicial lien.

There is no evidence that appellant's parents had any greater right to the five-acre tract than any other creditor. Consequently, Section 3.402(a)(1) is inapplicable.

■ Appellee alternatively cites Section 3.402(a)(6), which provides an economic contribution claim for capital improvements to property, as additional authority for her economic contribution award; but she provides no authority for the proposition that the payment of her ex-husband's prenuptial debt constitutes a capital improvement. The payment of an antecedent debt for the acquisition of property, without more, is not a capital improvement to property; therefore, Section 3.402(a)(6) is also inapplicable.

Consequently, we find the trial court abused its discretion when it awarded a claim for economic contribution for the $2,000 payment to appellant's parents. Whether this error materially affects the trial court's just and right division of the property will be addressed separately.

*Appointment of a Receiver.*

The trial court found the 12.03–acre tract purchased during the marriage was community property and awarded each an undivided one-half interest. The court then included the following provision in the divorce decree:

If the parties do not wish to retain their undivided one-half interest in the 12.03 acre tract of land, as awarded hereinabove, and neither is then able to acquire the interest of the other party within 30 days after the entry of this Final Decree of Divorce, then and in that event, IT IS ORDERED AND DECREED that the parties' undivided one-half interest in 12.03 acre tract of land out of Block 4 of the Charles S. Brown Survey Abstract No. 59, in Erath County, Texas, further described by metes and bounds as set forth in Exhibit "A" attached hereto and incorporated herein for all purposes, shall be sold under the following terms and conditions:

1. The Court will appoint a receiver that is agreed upon by the parties, and the receiver shall take possession and sell the real property on the terms and conditions as may be determined by this Court.

2. The net sales proceeds (defined as the gross sales price less all costs and fees of sale) shall be distributed as follows:

a. One-half to BESSIE MAE NELSON; and

b. One-half to KENNETH RUSSELL NELSON.

Appellant argues that the trial court abused its discretion by not considering whether the property was partitionable in kind and by appointing the receiver without notice.

■ The trial court has broad discretion to divide the marital estate in a manner it deems just and right. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). That authority includes the power to appoint a receiver in appropriate circumstances. *Rusk v. Rusk,* 5 S.W.3d 299, 306 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The Texas Supreme Court, however, has held that this discretion should not be exercised until the trial court first determines if the property is subject to partition in kind. *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299, 303 (1960). To make this determination, trial courts should consider the nature and type of property involved and the relative conditions, circumstances, capabilities, and experience of the parties. *Walston v. Walston,* 971 S.W.2d 687, 693 (Tex.App.-Waco 1998, pet. denied).

Appellee concedes that the trial court should first determine if the property is subject to partition in kind before appointing a receiver. She argues, however, that

the trial court had before it evidence concerning the suitability of partitioning the acreage and that the court obviously considered whether the property could be partitioned. Appellee points to her testimony that she was willing to have the tract surveyed and divided equally or to have the entire tract sold and the proceeds divided between the parties. She also points to appellant's testimony that he did not want to co-own the tract with appellee, nor did he want the acreage sold and the net sale proceeds divided.

■ The record does not support appellee's contention that the trial court considered partitioning the land. Appellant requested findings of fact and conclusions of law. The trial court's findings do not address whether the property could be partitioned in kind, nor do they otherwise explain the basis for the court's ruling. Because findings of fact were requested, we may not imply any omitted finding and, therefore, cannot conclude the trial court considered partitioning the land. TEX.R. CIV. P. 299; *Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

Appellant's second issue is sustained. This case is remanded to the trial court for further consideration of this issue.

*The Characterization of Appellee's Separate Property*

■ The trial court found that the $16,616.51 that the parties spent on their home's construction from the proceeds of the sale of appellee's house was her separate property. Appellant argues that this was error because appellee failed to overcome the presumption of community property by clear and convincing evidence.

■ Assets owned by parties prior to their marriage are separate property. TEX. CONST. art. XVI, § 15; TEX. FAM.CODE ANN. § 3.001 (Vernon 1998). However, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. TEX. FAM.CODE ANN. § 3.003 (Vernon 1998). Consequently, appellee's Stephenville house and the net proceeds from its sale, so long as they were segregated, were her separate property; and the five-acre tract appellant purchased from his parents was his separate property.

■ The question is what happened when appellee's separate property was sold before the marriage and the net proceeds were not maintained in a segregated account but were arguably used before the marriage to pay at least a portion of the construction costs for the home in which the parties lived after their marriage? Appellee was required to prove by clear and convincing evidence that these funds were separate property. Section 3.003(b). This required evidence which "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2002). Because the proceeds were not maintained in a segregated account, appellee's burden required her to trace and identify the property she claimed to be separate. *Estate of Hanau v. Hanau,* 730 S.W.2d 663, 667 (Tex.1987).

■ Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Ganesan v. Vallabhaneni,* 96 S.W.3d 345, 354 (Tex.App.-Austin 2002, pet. denied). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property

that, because of its time and manner of acquisition, is separate in character. *Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex.1975).

Both parties testified that appellee used money from the sale of her Stephenville house to pay construction costs on their new home. Appellee introduced the closing statement from that sale. This statement confirmed that the house was sold before the parties' marriage and that appellee realized more than the $16,616.51 she claimed as separate property. Appellee also introduced a deposit slip which established that the sales proceeds were deposited into appellant's bank account. Finally, the checks that appellee contends were written for construction costs were also introduced into evidence.

■ Appellant does not dispute that the Stephenville house and its proceeds were separate property. Appellant contends that appellee failed to overcome the community presumption because she did not trace the funds after their deposit into his account. Appellant correctly notes that not all of the construction checks appellee introduced into evidence were from the account into which appellee's sales proceeds were deposited. Most were, but some were drawn on appellee's personal account at a different bank.[1] Because this was appellee's personal account, any money spent by her from that account prior to the marriage was her separate property, and she was not required to trace any transfer. Article XVI, section 15; Section 3.001.

We hold that the evidence is sufficient to support the trial court's finding that the $16,616.51 was appellee's separate property and, therefore, overrule appellant's third issue on appeal.

*Reimbursement of Funds Spent by Appellee Prior to Marriage*

■ Appellant contends in his fourth issue that, if the trial court correctly characterized the $16,616.51 spent by appellee on the marital home as her separate property, it nonetheless erred by finding she was entitled to reimbursement because those funds were spent prior to the date of marriage.[2] Appellant relies on TEX. FAM. CODE ANN. § 3.408 (Vernon Supp.2005) which defines a reimbursement claim to include a "payment by one marital estate of the unsecured liabilities of another marital estate." Appellant urges that this precludes reimbursement for any payments made prior to marriage because by definition a "marital estate" cannot exist prior to marriage.

---

1. Appellant's account was at Bank of America. One check in Exhibit No. 10 was drawn on an account in appellant's name at First Gibralter Bank. This check has the same routing number as his Bank of America account and, therefore, is the same account. Appellee's name was added to appellant's Bank of America account before the marriage. Appellant invites us to treat this as a different account from his personal account; but, because the routing number is the same, it is clear that this is in fact the same account.

2. Appellant complains the trial court entered conflicting findings of fact in connection with this issue. The trial court's Finding No. 11 was: "Prior to the marriage, Petitioner's separate property estate expended the sum of $16,616.00 for improvements to the Respondent's separate property 5.00 acres located in Erath County, Texas." In Finding No. 14, the court held: "On the date of divorce, the equity in the Respondent's separate 5.00 acres located in Erath County, Texas, was $53,950.00, less $16,616.00 reimbursement to wife's separate property estate for funds *invested during the marriage* in the home on the 5 acre tract." (emphasis added) Because the parties concede the monies were spent prior to the marriage and because the thrust of Finding No. 14 concerned the court's equity calculation rather than the date of payment, we need not concern ourselves further with this issue.

Appellee concedes that she does not have a claim for economic contribution for prenuptial expenditures but contends that the court had the authority under TEX. FAM.CODE ANN. § 7.007 (Vernon Supp.2005) to award reimbursement. This statute instructs courts to apply equitable principles to:

(1) determine whether to recognize the claim after taking into account all the relative circumstances of the spouses; and

(2) order a division of the claim for reimbursement, if appropriate, in a manner that the court considers just and right, having due regard for the rights of each party and any children of the marriage.

TEX. FAM.CODE ANN. § 7.007(b) (Vernon Supp.2005).

We believe appellant reads Section 3.408 too narrowly. Unlike TEX. FAM.CODE ANN. § 3.403 (Vernon Supp.2005) which defines economic contribution claims in mandatory terms, the definition of economic reimbursement in Section 3.408 is simply a non-exhaustive list of two potential reimbursement claims. Neither example is defined by the timing of the event. Section 3.408(b).[3] The legislature also provided five instances in which a reimbursement claim may not be awarded. *See* TEX. FAM. CODE ANN. § 3.409 (Vernon Supp.2005). These instances are specific categories of expenditure, such as child support and student loan payments. None turn on the timing of the expenditure. Consequently, we do not believe the legislature intended that a reimbursement claim could never exist for prenuptial expenditures.

Reimbursement is an equitable remedy. *Vallone v. Vallone,* 644 S.W.2d 455, 458 (Tex.1982). The Family Code specifically provides that courts are to "resolve a claim for reimbursement by using equitable principles." Section 3.408(c). Because reimbursement is an equitable doctrine, a court of equity is bound to look at all the facts and circumstances to determine what is fair, just, and equitable. *Penick v. Penick,* 783 S.W.2d 194, 197 (Tex.1988).

Great latitude must be accorded to the trial court in applying equitable principles to determine reimbursement claims because this does not involve simply balancing the ledgers between competing marital estates. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as the discretion exercised by a trial court in making a just and proper division of the community estate. *Lucy v. Lucy,* 162 S.W.3d 770, 776 (Tex.App.-El Paso 2005, no pet.).

The trial court found, and we have previously affirmed, that the $16,616.51 spent by the parties on prenuptial construction costs was appellee's separate property. That money helped fund a house on appellant's separate property. The trial court did not abuse its discretion when it found that appellee was entitled to reimbursement. Appellant's fourth issue is overruled.

*Calculation of Appellee's Reimbursement Claim*

Appellant contends that the reimbursement award is incorrect because there was insufficient evidence to establish the enhancement of value of the real property and because appellee failed to prove, and

---

3. According to the statute, a claim for reimbursement includes:

(1) payment by one marital estate of the unsecured liabilities of another marital estate; and

(2) inadequate compensation for the time, toil, talent, and effort of a spouse by a business entity under the control and direction of that spouse.

Section 3.408(b).

the trial court failed to consider, the offsetting benefits appellee's separate estate received.

▇▇▇▇ A reimbursement claim for improvements to another estate is measured by the "enhancement value" to the benefited estate. *Kimsey v. Kimsey,* 965 S.W.2d 690, 700 (Tex.App.-El Paso 1998, pet. denied). The party claiming reimbursement has the burden of proof. *Jensen v. Jensen,* 665 S.W.2d 107, 110 (Tex.1984). The enhancement value is the difference between the fair market value before and after any improvements. *Anderson v. Gilliland,* 684 S.W.2d 673, 675 (Tex.1985). It is, thus, not simply the improvements' cost. *Sharp v. Stacy,* 535 S.W.2d 345, 351 (Tex. 1976).

▇▇▇▇ The initial dispute concerns the time period for which the increase is measured. Appellant would restrict this to the marriage and contends there is no evidence of the property's value as of April 9, 1995, when the parties were married. In *Anderson,* 684 S.W.2d at 673, the supreme court considered the proper method for calculating a reimbursement claim. The court characterized reimbursement as an equitable right to be determined by equitable principles. *Id.* at 675. The court rejected a cost-based rule and held that equity required the benefited estate to pay for the enhanced value it received. *Id.* This approach turns from formalistic inquiries, such as costs incurred and timing, to a more generalized inquiry into the value received. We hold that it is immaterial whether appellant's separate estate was enhanced before or after the marriage. The relevant question is to what extent was appellant's separate estate enhanced by appellee's contribution.

Appellee introduced the 1995 tax roll, which showed the property's value was $9,664 as of January 1, 1995. She testified, without objection, that in her opinion this was a correct assessment. The parties had just started construction of their house at the time of the assessment. The tax appraisal assigned $6,030 of the property's value to the land. The remaining $3,634 was attributed to improvements.

Appellee also introduced without objection the current tax assessment. This indicated that the property's value had increased to $53,950. Of this amount, $43,750 was attributed to improvements, and the remaining $10,200 to the land. Appellee testified that she was willing to rely upon this assessment.

The trial court accepted these values and entered findings of fact that included the following:

8. *On the date of marriage,* the fair market value of the Respondent's separate property 5.00 acres located in Erath County, Texas was $9,664.00.

9. *On the date of marriage,* the mortgage balance of the Respondent's separate property 5.00 acres located in Erath County, Texas, was $2,000.00.

10. *On the date of marriage,* the equity in the Respondent's separate 5.00 acres located in Erath County, Texas, was $7,664.00. (emphasis added)

The testimony established that these were not the values when the parties married in April 1995 and their house was substantially complete but that these were the values as of January 1, 1995, when construction had just started. Appellant claims that his equity in the property as of the date of marriage was $7,664. This represents the appraised value as of January 1, 1995, less the $2,000 the parties subsequently paid his parents. Thus, his testimony really went to the property's value as of January 1, 1995, rather than April 9, 1995, and was consistent with his ex-wife's testimony.

We have held that appellee's reimbursement claim was not limited to contributions made subsequent to the marriage but that it could include prenuptial expenditures. Because the parties had not begun construction at the time of the assessment, January 1, 1995, would be an appropriate starting date for a reimbursement calculation. The parties did not disagree at trial on the property's January 1 value. Thus, findings eight, nine, and ten would support a reimbursement determination if modified to reflect a January 1 valuation date. We are not permitted, however, to modify the trial court's findings of fact to replace the date of marriage with January 1. *See Patel v. Ambassador Drycleaning & Laundry Co.*, 86 S.W.3d 304, 309 (Tex.App.-Eastland 2002, no pet.)(appellate courts cannot find facts which would be the basis for a rendition, but may only "unfind" certain facts and remand for a new trial). We find, therefore, that the trial court abused its discretion when it calculated the reimbursement claim.

Whether this requires a remand is a separate question. The Texas Supreme Court has held that, even if a trial court abuses its discretion, remand is appropriate only if the error materially affects the court's just and right division of the property. *Jacobs*, 687 S.W.2d at 732–33. We have previously found the trial court abused its discretion by finding the marital estate had an economic contribution claim for the payment of appellant's debt to his parents. We have now also determined that the trial court incorrectly determined appellee's reimbursement award. Because these findings are necessarily intertwined with the division of the community estate and because we have been instructed that an intermediate court may not engage in piecemeal editing of the property division, but should remand to the trial court, *see Jacobs*, 687 S.W.2d at 732, we must remand this case to the trial court for further consideration of this issue.

Because we must remand for recalculation, we believe it appropriate to address appellant's remaining contentions concerning this calculation. Appellant argues that merely because appellee spent $16,616.51 in home construction costs is no evidence of a reimbursement claim because cost incurred is not the appropriate measure. We agree. The appropriate measure is the enhancement in value appellant's separate property received. *Anderson*, 684 S.W.2d at 675. As previously noted, the trial court's calculation may include prenuptial contributions and, thus, may consider premarital enhancements in value. The trial court's calculation should also consider any benefit the respective estates may have received from appellant's separate property. *See Zieba v. Martin*, 928 S.W.2d 782, 788 (Tex.App.-Houston [14th Dist.] 1996, no writ); *see also Penick*, 783 S.W.2d at 198 (noting similarity of reimbursement to quantum meruit and, therefore, the requirement of a contribution for which the contributing estate has not received a quid pro quo and the receiving estate has been unjustly enriched). *But cf.* Section 3.408(d) ("Benefits for the use and enjoyment of property may be offset against a claim for reimbursement for expenditures to benefit a marital estate or property that does not involve a claim for economic contribution to the property.").

*Economic Contribution for Capital Improvements to Appellant's Separate Property.*

The trial court awarded appellee an economic contribution claim of $9,300 for her one-half of the community estate's contribution to appellant's separate property. This was apparently calculated by taking

the fair market value of appellant's five-acre tract at the time of divorce $53,950 less appellee's expenditure of $16,616.51 in separate property funds and multiplied by the fraction set out in Section 3.403.[4] Because we have found the trial court abused its discretion by awarding contribution for the $2,000 paid to appellant's parents for his five acres, we must reverse this award and remand for further proceedings.

■ Just as we did with the trial court's reimbursement award, we will address appellant's remaining challenge to this award in the interest of judicial economy. Appellant argues there is no evidence of the property's value on the date of the marriage and, thus, insufficient evidence to establish the enhancement of value. We agree. As previously discussed, the parties' testimony established the property's value as of January 1. This is sufficient for a reimbursement claim but not for an economic contribution claim because an economic claim cannot arise for premarital expenditures. Economic contribution is a statutory, as opposed to equitable, remedy; therefore, the language of the statute is controlling. The statute requires consideration of "the equity in the property as of the date of the marriage or, if later, the date of the first economic contribution by the contributing estate." Former Tex. Fam.Code § 3.403(b)(2)(B)(ii) (2001).

The trial court calculated appellant's "net equity" in the five-acre tract by determining the fair market value on the date of divorce and subtracting appellee's separate property contribution of $16,616.51. We assume this was done to avoid providing appellee a double recovery with the reimbursement and contribution awards. We appreciate the trial court's intention, but Section 3.403 does not support this calculation. Rather, it requires the use of the "benefited property's" equity as of the date of divorce. Section 3.403(b)(1).

■ The property's equity as of the date of divorce should be multiplied by a fraction whose numerator is the economic contribution to the property by the contributing estate and whose denominator is the economic contribution plus the property's equity as of the date of the marriage or, if later, the date of the first economic contribution by the contributing estate.

Calculating the enhancement in value by utilizing the property's fair market value on the date of marriage, as opposed to January 1, will lessen the trial court's concern. Because reimbursement is an equitable remedy, if any further adjustment is necessary to assure a just and right division and avoid a double recovery, the trial court has discretion to fashion an appropriate reimbursement award. Appellant's sixth issue is sustained, and the case is remanded for further consideration of this issue.

4. This suit was filed on August 7, 2003. Section 3.403 was amended in the 2003 legislative session, effective September 1, 2003, for all cases filed on or after that date. Therefore, the prior version of the statute applies.

The numerator of this fraction is the economic contribution to the property by the contributing estate. In this case, the numerator was the $2,000 paid to appellant's parents for the five-acre tract and the $5,597.39 in community funds spent on home construction costs, for a total of $7,597.39.

The denominator is the economic contribution to the property by the contributing estate and the equity in the property as of the date of the marriage or, if later, the date of the first economic contribution by the contributing estate ($7,597.39 + $7,664 = $15,261.39).

Because the trial court divided the community estate's contribution claim equally between the parties, the resulting number should be multiplied by one-half.

The resulting formula is: ($37,334 * (7,597.39/15,261.39) * ½ = 9,300).

*The Lien Imposed on Appellant's Separate Property*

Appellant's final point challenges the trial court's decision to impose a lien on his separate property. Appellant acknowledges that a trial court may impress an equitable lien against one spouse's separate property to secure the other's right of reimbursement for community improvements to that property. Appellant contends that this authority does not give trial courts the authority to impose a lien simply to secure a just and right division of the community property.

Appellant argues that, if the trial court's authority to impose a lien is not restrained, courts will be free to use them to secure payment of judgments for the division of the community estate. Appellant's concern is not present in this case. The trial court found that appellee had received an excess allocation of community property and deducted this from her economic contribution and reimbursement awards. The net award, for which the lien secured, represented reimbursement and economic contribution awards arising out of improvements to appellant's separate property. The trial court did not abuse its discretion by awarding appellee a lien to secure that award. Appellant's seventh issue is overruled.

*Conclusion*

The judgment of the trial court is affirmed in part and reversed and remanded in part. The portion of the judgment that characterizes the $16,616.51 spent on house construction as Bessie Mae Nelson's separate property and imposes a lien on Kenneth Russell Nelson's separate property is affirmed. The portions of the judgment conditionally appointing a receiver, determining economic contributions, and awarding reimbursements are reversed;

and these issues are remanded to the trial court for further consideration.