**Opinion filed October 31, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00292-CV

_____

## BILLY GEORGE KEMP, Appellant

## V.

## SHARON ANNE KEMP, Appellee

### On Appeal from the 106th District Court

### Dawson County, Texas

### Trial Court Cause No. 10-07-18413

## M E M O R A N D U M   O P I N I O N

This appeal arises from a divorce proceeding. Appellant, Billy George Kemp (Bill), contends that the trial court erred by granting the divorce on the ground of cruelty; by awarding trial and appellate attorney's fees to Appellee, Sharon Anne Kemp (Anne); by ordering him solely responsible for the parties' federal income tax liabilities; by granting an owelty lien for the money awarded to Anne; by

ordering him to pay off a loan that Anne made to the community estate; and by denying him the opportunity to present evidence that was favorable to him. We modify and affirm.

*Background*

Anne and Bill were married on February 13, 2009. While married, they purchased a house in Lamesa and a minimal amount of personal property. Anne separated from Bill and filed for divorce in July 2010. Anne sought a divorce on the grounds of insupportability and cruelty. Anne alleged claims for reimbursement and attorney's fees.

Bill obtained counsel to represent him in this case. The trial court entered temporary orders. Anne's counsel served discovery requests on Bill. Bill did not respond to the discovery requests. Bill's counsel filed a motion to withdraw as his counsel. The trial court granted the motion. After Bill's counsel withdrew, Anne's counsel sent a letter to Bill in which he included a copy of Anne's discovery requests and informed Bill that his discovery responses were past due. Bill still did not answer the discovery requests.

Bill represented himself pro se at trial. Anne testified that she had bank accounts before the marriage. Bill had credit card debts before the marriage. Anne presented evidence that, during the marriage, she paid off some of Bill's separate property debts with her separate property funds. Anne also presented evidence that she and Bill made improvements to the house in Lamesa with her separate property funds.

Anne testified that Bill exhibited anger issues while they were married. She said that he yelled and cursed at people who worked for account companies on the phone and that, at times, she had to intervene in an effort to calm Bill down. Anne also testified that Bill engaged in incidents of road rage when she was a passenger in the car. She said that he blocked other drivers in parking lots and confronted

them about their driving habits. Anne said that Bill kicked his dog. Anne moved out of the marital residence because "[she] was afraid that [she] might be next."

After the trial court entered temporary orders, Anne went to the house in Lamesa to retrieve her personal property. Anne testified that, when she arrived there, she discovered that Bill had burned her furniture and clothing. Anne said that her furniture was marred and that her clothing and other personal items were covered in soot. She said that Bill sent her pictures of her deceased son and Bill's deceased mother. Anne said that "[Bill's] anger was getting worse." Anne testified that she had a heart condition and that Bill's conduct made it worse.

Following the trial, the trial court entered a final decree of divorce. In the decree, the trial court awarded Bill, among other things, the house in Lamesa, subject to an owelty lien in favor of Anne. The trial court awarded Anne, among other things, money judgments against Bill for the value of her community interest in the Lamesa house and for the outstanding amount due on a loan that she made from her separate property to Bill and the community estate. The trial court also awarded attorney's fees to Anne. Bill appeals from the final decree. He is represented by counsel in this appeal.

*Standard of Review*

Bill challenges the sufficiency of the evidence in many of his appellate issues. As Bill acknowledges in his brief, we review most appealable issues in family law cases under an abuse of discretion standard. *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.); *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 205 (Tex. App.—El Paso 2003, no pet.). This standard of review applies to a trial court's granting of a divorce on fault grounds and to a trial court's division of property. *C.A.S.*, 405 S.W.3d at 382; *Wells v. Wells*, 251 S.W.3d 834, 838 (Tex. App.—Eastland 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or

principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.).

In analyzing a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Superior Broadcast Products v. Doud Media Group, L.L.C.*, 392 S.W.3d 198, 210 (Tex. App.—Eastland 2012, no pet.). We must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 821–22, 827; *Superior Braodcast*, 392 S.W.3d at 210. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810; *Pendergraft v. Carrillo*, 273 S.W.3d 362, 366 (Tex. App.—Eastland 2008, pet. denied). In analyzing a factual sufficiency challenge, we must consider and weigh all of the evidence and should set aside a fact finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d

629, 635 (Tex. 1986); *Bien v. Bien*, 365 S.W.3d 492, 495 (Tex. App.—Eastland 2012, no pet.).

When, as in this case, no findings of fact or conclusions of law are filed or requested, we must presume that the trial court made all the necessary findings to support its judgment. *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.); *Boyd*, 131 S.W.3d at 611. If the evidence supports the trial court's implied findings, we must uphold the judgment on any theory of law applicable to the case. *Roberts*, 402 S.W.3d at 838; *Boyd*, 131 S.W.3d at 611.

Under Texas law, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006). To rebut this presumption, the person seeking to prove the separate character of the property must do so by clear and convincing evidence. *Id.* § 3.003(b). Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* § 101.007 (West 2008); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review. *Sink*, 364 S.W.3d at 344. In reviewing the evidence for legal sufficiency, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *Id.* at 344. We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the record, a factfinder could reasonably form a firm belief or

conviction that the allegations in the petition were proven. *Id.*; *Boyd*, 131 S.W.3d at 611.

*Divorce on Ground of Cruelty*

In the final decree, the trial court ordered that Anne and Bill were divorced and that the marriage between them was dissolved on the ground of "Insupportability" and the fault ground of "Cruelty." Bill contends in his first appellate issue that the trial court abused its discretion in granting the divorce on the ground of cruelty. Bill asserts that the evidence was legally and factually insufficient to support the finding of cruelty because "there [was] no evidence that [his] conduct rose to the level of cruel treatment that rendered the couple's living together insupportable."

A trial court may grant a divorce on the ground of cruel treatment. FAM. § 6.002 (West 2006). To be considered "cruel treatment," the conduct of the accused party must rise to such a level as to render the couple's living together insupportable. *Id.*; *Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Newberry v. Newberry*, 351 S.W.3d 552, 557 (Tex. App.—El Paso 2011, no pet.). "Insupportable," for purposes of "cruel treatment," means incapable of being borne, unendurable, insufferable, or intolerable. *Ayala*, 387 S.W.3d at 733; *Henry v. Henry*, 48 S.W.3d 468, 473–74 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Mere trivial matters or disagreements do not justify the granting of divorce for cruel treatment. *Ayala*, 387 S.W.3d at 733. Acts occurring after separation can support a finding of cruel treatment. *Ayala*, 387 S.W.3d at 733; *Newberry*, 351 S.W.3d at 557.

Anne testified about Bill's anger issues. She said that he yelled and cursed at people on the phone. Bill exhibited road rage while Anne was a passenger in the car. Anne said that she left Bill because she was afraid of him. Anne moved to her house in Lubbock when she left Bill. Bill directed his anger toward Anne after she

6

separated from him. Anne said that, on one occasion, Bill came into her house in Lubbock. Anne said that Bill would not leave her house and that, ultimately, she had to call the police to get Bill to leave. When Anne returned to the house in Lamesa to get her property, Anne discovered that Bill had burned her furniture and clothing. Bill did not offer any evidence to dispute that he burned Anne's property. Anne also said that Bill sent her pictures of her deceased son and Bill's deceased mother. Anne testified that Bill's conduct exacerbated her heart condition.

Based on the evidence, the trial court could have reasonably concluded that Bill's conduct constituted cruel treatment such that the marriage was made insupportable. As the sole judge of the credibility of the witnesses, the trial court was free to believe Anne's testimony. *Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011). Anne's testimony, which was in most respects unchallenged by Bill, provided more than a scintilla of evidence to support the trial court's finding of cruelty as a ground for divorce. Thus, the evidence was legally sufficient to support the cruelty finding. After considering all of the evidence, we cannot conclude that the evidence supporting the trial court's cruelty finding was so weak or that the cruelty finding was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. The evidence was factually sufficient to support the trial court's cruelty finding.

The trial court did not abuse its discretion by granting the divorce on a cruelty ground. Bill's first issue is overruled.

*Reimbursement for Loan*

In her petition, Anne sought reimbursement for funds she allegedly used from her separate estate to pay unsecured liabilities of Bill's separate estate. In the final decree, the trial court awarded Anne $15,200 to reimburse her for a loan that was made from her separate property estate to Bill and the community estate. In

his sixth issue, Bill contends that the trial court erred by ordering reimbursement for the loan to Anne because the evidence showed that the proceeds of the loan were commingled with community property funds and, therefore, became community property.

Reimbursement is an equitable remedy. *Vallone v. Vallone*, 644 S.W.3d 455, 458 (Tex. 1982); *Nelson v. Nelson*, 193 S.W.3d 624, 632 (Tex. App.—Eastland 2006, no pet.). A claim for reimbursement arises upon dissolution of a marriage when funds from one marital estate have been expended to benefit another marital estate. *Roberts*, 402 S.W.3d at 838. Permissible reimbursement may run from community estate to separate estate, from separate estate to community estate, and from separate estate to separate estate. *Henry*, 48 S.W.3d at 477. A party may bring a claim for reimbursement of payments that were made by one marital estate to satisfy the unsecured liabilities of another marital estate. FAM. § 3.402(a)(1) (West Supp. 2013). The party claiming the right of reimbursement has the burden of proof. *Garcia v. Garcia*, 170 S.W.3d 644, 650 (Tex. App.—El Paso 2005, no pet.).

Great latitude must be given to a trial court in applying equitable principles to value a claim for reimbursement. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *Nelson*, 193 S.W.3d at 632. Accordingly, we review a trial court's resolution of a claim for reimbursement under an abuse of discretion standard. *Penick*, 783 S.W.2d at 198; *Nelson*, 193 S.W.3d at 632.

Anne testified that she opened an account at Lubbock Telco Federal Credit Union in the 1980s. Anne introduced statements from the account into evidence. As of December 31, 2008, Anne's Telco account had a balance of $66,420.49. As stated above, Anne and Bill were married on February 13, 2009. Anne testified that, in February 2010, she made a $20,200 loan from her Telco account to the community estate. A statement from Anne's Telco account shows that, on

8

February 1, 2010, Anne withdrew $20,200 from her Telco account. Anne testified that she deposited the funds into a joint checking account that she had with Bill at Lamesa National Bank. She said that some of the funds were used for repair of a house that Bill owned in Odessa. Anne said that she had been paid back $5,000 of the funds. She sought reimbursement for the remaining $15,200 balance on the loan.

Anne served requests for admissions on Bill. Bill never responded to the requests. Because Bill failed to respond, the requests were deemed admitted and the matters in the requests were conclusively established as to him. TEX. R. CIV. P. 198.2(c), 198.3. Anne's Request for Admission No. 5 requested Bill to admit or deny "that of the February 2, 2010, deposit of $21,702.84 into a Lamesa National Bank account in the name of Bill and Sharon Kemp, $20,200 was from Sharon Kemp's Telco Federal Credit Union account." Request for Admission No. 9 requested Bill to admit or deny "that in February 2010 you requested from Petitioner a loan in the amount of $20,200 from Sharon Kemp's Telco Federal Credit Union account."

Anne established that the funds in the Telco account were her separate property. She overcame the community property presumption with respect to the funds in the Telco account with clear and convincing evidence. Bill does not dispute that the funds in the Telco account were Anne's separate property before they were deposited into the Lamesa account. The evidence showed that Anne withdrew $20,200 of the Telco account funds and deposited them into her joint account with Bill. Based on the evidence, including Bill's deemed admissions, the trial court could have reasonably concluded that Anne loaned the money to Bill for the benefit of his separate estate.

Bill contends that Anne's Telco account funds lost their separate property character because they were commingled with funds in the community account at

9

the Lamesa bank. Bill asserts that Anne did not sufficiently trace the funds in the Lamesa account to establish that they were her separate property. However, Anne's reimbursement claim did not depend on her being able to establish that the funds in the Lamesa account were her separate property. Rather, her reimbursement claim was based on her contention that she made a loan from her separate estate to Bill. Anne presented evidence that established the existence of the loan, the amount of the loan, and the outstanding balance on the loan.

We conclude that the trial court did not abuse its discretion by awarding reimbursement of $15,200 to Anne. Bill's sixth issue is overruled.

*Federal Income Tax Liability*

The trial court ordered in its final decree that "BILLY GEORGE KEMP shall be solely responsible for all federal income tax liabilities of the Parties from the date of marriage through December 31, 2009 and prior years." In his fourth issue, Bill contends that the trial court abused its discretion by ordering him to be solely responsible for federal income tax liabilities because no evidence related to tax liability was offered at trial.

A trial court has broad discretion in dividing the marital estate in a manner that the court deems just and right. FAM. § 7.001 (West 2006); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Langston v. Langston*, 82 S.W.3d 686, 690 (Tex. App.—Eastland 2002, no pet.). Debts and liabilities incurred jointly by the parties, such as federal income tax liabilities, must be considered by the trial court in determining a just and right division of the community estate and must be apportioned to one or both of the spouses. *Bush v. Bush*, 336 S.W.3d 722, 740 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A trial court has the authority and discretion to impose the entire tax liability of the parties on one spouse. *In re S.A.A.*, 279 S.W.3d 853, 857 (Tex. App.—Dallas 2009, no pet.).

10

The trial court imposed the tax liability of the parties on Bill "from the date of marriage through December 31, 2009 and prior years." The evidence showed that Anne requested Bill to produce copies of his tax documents. The record does not show that Bill produced the documents. Based on the record evidence, we cannot conclude that the trial court abused its discretion by ordering Bill solely responsible for the parties' federal income tax liabilities from the date of the marriage through December 31, 2009. However, because Anne and Bill were not married until February 13, 2009, the trial court incorrectly imposed Anne's tax liability for the years prior to 2009 on Bill.

We note that Bill has failed to demonstrate that the imposition of tax liability on him for the year 2009 adversely affected him with respect to the trial court's overall division of the community estate. An appellate court should reverse a trial court's division of property only if the error materially affects the court's just and right division of the property. *See Henry*, 48 S.W.3d at 475. Accordingly, even if the trial court had erred by imposing federal income tax liability on Bill for the year 2009, the error would not require reversal of the trial court's final decree.

Bill's fourth issue is sustained to the extent that he complains that the trial court erred by imposing Anne's tax liability for years prior to 2009 on him. Otherwise, his fourth issue is overruled.

*Attorney's Fees*

The trial court awarded Anne $7,500 in attorney's fees through trial, $7,500 in attorney's fees in the event of an appeal to this court, and $5,000 in attorney's fees in the event of an appeal to the Texas Supreme Court. In his second and third issues, Bill contends that the trial court erred by ordering him to pay Anne trial and appellate attorney's fees because the evidence was legally and factually insufficient to support the award of the fees.

11

In a divorce action, a trial court may within its sound discretion award attorney's fees as part of a just and right division of the community property. *C.A.S.*, 405 S.W.3d at 386; *Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied). The trial court does not abuse its discretion when an award of attorney's fees is supported by the evidence. *Tull v. Tull*, 159 S.W.3d 758, 760 (Tex. App.—Dallas 2005, no pet.). The reasonableness of the fee is a question of fact that must be supported by evidence. *Sandone*, 116 S.W.3d at 208. To support an award of reasonable attorney's fees, there should be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, evidence on each of these factors is not necessary to determine the amount of an attorney's fee award. *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.). The court may also consider the entire record and the common knowledge of the lawyers and judges. *Phillips v. Phillips*, 296 S.W.3d 656, 673 (Tex. App.—El Paso 2009, pet. denied); *M.A.N.M.*, 231 S.W.3d at 567. A judgment awarding attorney's fees may be supported solely by the attorney's testimony. *Ayala*, 387 S.W.3d at 733.

Anne hired her current counsel to represent her in this case in late 2010. Anne was previously represented by other counsel. The trial occurred on June 8, 2011. Anne's counsel testified about his experience as an attorney. He said that he was familiar with the usual, customary, and reasonable attorney's fees charged in family law cases of this nature. He testified as to the work he had performed in the case. He said that he reviewed the proceedings that took place in the case before Anne hired him, submitted discovery, dealt with former counsel, and had consultations with Anne. He also said that he spent considerable time obtaining evidence to substantiate Anne's reimbursement claims. Anne's counsel testified

that his normal hourly rate was $300 an hour but that he may have given Anne a lesser hourly charge because she had previously been represented by other counsel. He estimated that he would spend a total of about twenty-five hours working on the case through trial and the preparation of a divorce decree. He also testified that he anticipated an additional $7,500 in attorney's fees would be necessary to prosecute an appeal of the case and an additional $5,000 in attorney's fees would be necessary if the case were taken to the Texas Supreme Court. Anne's counsel said that all of the services he had provided in representing Anne in the case had been usual, customary, and necessary. As of the date of trial, Anne had paid her counsel about $6,000 in legal fees to represent her in this case.

The evidence was legally and factually sufficient to support the trial court's award of trial and appellate attorney's fees to Anne. Considering the issues involved in the case and the testimony of Anne's counsel, we conclude that the trial court did not abuse its discretion by awarding attorney's fees to Anne for the amounts in the final decree. Bill's second and third issues are overruled.

*The Owelty Lien*

The trial court found that Bill and Anne had $34,182.65 in equity in the Lamesa house. In the final decree, the trial court awarded the house to Bill as part of the just and right division of the marital estate. The trial court awarded Anne the amount of $17,091.33, which represented one-half of the equity in the Lamesa house. The trial court imposed an owelty lien against the house to secure Bill's payment of $17,091.33 to Anne and to secure his payment of other sums awarded to Anne in the decree. Those awards included the following: the amount of $4,516.22 to repay Anne for a loan that she made from her separate property funds to pay off Bill's separate credit card debt; the amount of $3,964 to reimburse Anne for contributions that she made from her separate property funds for improvements to the Lamesa house; the amount of $15,200 to reimburse Anne for the loan that

13

she made from her separate property funds in the Telco account; and the amount of $7,500 to reimburse Anne for her payment of attorney's fees.

Bill contends in his fifth issue that the trial court erred by including the $4,516.22 loan, the $15,200 loan, and the attorney's fees in the owelty lien. Anne agrees in her brief that these items were not proper subjects of an owelty lien.

When dividing marital property on divorce, "the court may impose an equitable lien on the property of a benefited marital estate to secure a claim for reimbursement against that property by a contributing marital estate." FAM. § 3.406(a) (West. Supp. 2013); *see Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992). A trial court may impose a lien on the marital homestead to secure payment of the amount awarded to the other spouse for that spouse's homestead interest. *Wren v. Wren*, 702 S.W.2d 250, 252 (Tex. Civ. App.—Houston [1st Dist.] 1985, writ dism'd); *Brunell v. Brunell*, 494 S.W.2d 621, 623 (Tex. App.—Dallas 1973, no writ). Thus, the trial court properly included Anne's equity of $17,091.33 and Anne's contribution of $3,964 for improvements to the Lamesa house in the owelty lien. However, as the parties agree in their briefs, the owelty lien should not have included the other amounts. Bill's fifth issue is sustained.

*Opportunity to Present Evidence*

In his seventh issue, Bill contends that the trial court erred by denying him the opportunity to present evidence that was favorable to him. Bill argues that, without such evidence, the trial court could not and did not render a just and right division of the community estate.

The record does not support Bill's contention that the trial court denied him the opportunity to present favorable evidence. Bill cross-examined Anne. Bill elected not to cross-examine Anne's attorney. The trial court informed Bill that he could present relevant matters in an appropriate manner. Bill testified on his own

behalf.  He did not call any other witnesses.  He did not seek to introduce any documentary evidence.

Even if the trial court had denied Bill the opportunity to present favorable evidence, Bill did not preserve the issue for appellate review.  The trial court sustained relevancy and hearsay objections to some of Bill's testimony.  Bill did not make an offer of proof related to any of the testimony that the trial court excluded.

Pro se litigants must comply with the rules of evidence and procedure. *Baughman v. Baughman*, 65 S.W.3d 309, 312 (Tex. App.—Waco 2001, pet. denied); *Holt v. F.F. Enterprises*, 990 S.W.2d 756, 758 (Tex. App.—Amarillo 1998, pet. denied).  To challenge the exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by an offer of proof.  *Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  The primary purpose of an offer of proof is to enable the reviewing court to determine whether the exclusion was erroneous and, if so, whether the error was harmful.  *Id.* at 608.  The failure to make an offer of proof of the excluded testimony waives any complaint about the excluded evidence on appeal.  *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied). Bill failed to preserve his seventh issue for review.  Additionally, because Bill did not make an offer of proof, he cannot demonstrate that the trial court excluded evidence that was favorable to him.  Bill's seventh issue is overruled.

*This Court's Ruling*

The owelty lien provisions are found on page ten of the final decree of divorce. In accordance with our ruling on Bill's fifth issue, we modify Section (2) of the decree on page ten to read as follows:

> (2) An award and judgment in favor of Petitioner Wife for reimbursement to her separate property estate, against Respondent Husband in the amount of $3,964, bearing interest at the rate of 5% per annum from and after June 8, 2011, all due and payable on or before August 15, 2011.

We modify the decree to delete Section (3) on page ten in its entirety.

We also modify the decree to delete the words "and prior years" in the first paragraph under the heading "Federal Income Tax" on page eleven of the decree.

As modified, we affirm the trial court's final decree of divorce.


TERRY McCALL

JUSTICE


October 31, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.