

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00554-CV

Martin E. **ROBERTS**,
Appellant

v.

Margaret D. **ROBERTS**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-09297
Honorable Antonia Arteaga, Judge Presiding

**OPINION ON APPELLEE'S MOTION FOR EN BANC RECONSIDERATION**

Opinion by:      Patricia O. Alvarez, Justice

Sitting en banc:   Catherine Stone, Chief Justice
                   Karen A. Angelini, Justice
                   Sandee Bryan Marion, Justice
                   Marialyn Barnard, Justice
                   Rebeca C. Martinez, Justice
                   Patricia O. Alvarez, Justice
                   Luz Elena D. Chapa, Justice

Delivered and Filed:  May 1, 2013

AFFIRMED IN PART, REVERSED IN PART, REMANDED

On the court's own motion, we withdraw the panel opinion and judgment of December 19, 2012, and substitute this en banc opinion and judgment. Appellee's motion for en banc reconsideration is denied. *See* TEX. R. APP. P. 49.7.

Martin Roberts appeals from a divorce decree dissolving the marriage between Martin and Margaret Roberts signed on July 15, 2011. On appeal, Martin complains of the trial court's award to Margaret of (1) reimbursement of separate property funds expended towards the mortgage on the marital residence, and (2) spousal maintenance. Although both parents were designated as joint managing conservators, Martin complains the divorce decree (1) violates the Establishment Clause of the First Amendment to the United States Constitution by requiring him to surrender the children to Margaret during his periods of possession so they may attend religious instruction; and (2) violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution by imposing a morality clause solely against Martin on the basis of his gender.

## BACKGROUND

Martin and Margaret married on March 8, 1997, and had two children together. Martin worked as a civilian for the U.S. Army and was also in the Navy Reserves. It is undisputed that for several years prior to separation, Martin's income was the family's sole source of income.

Martin filed for divorce in 2009. The case went to trial before a jury in 2011 on a geographical restriction sought by Martin that is not at issue in this appeal. The trial court heard the remaining non-jury issues including possession of and access to the children, characterization and division of property, and spousal maintenance. Pertinent to this appeal, the trial court ordered a disproportionate division of the marital estate and confirmed Margaret's separate property reimbursement claim in the amount of $41,000, represented by equity in the marital residence that was awarded to Margaret. At the time of divorce, the marital residence was valued at $140,000 and unencumbered by a mortgage. The trial court ordered Martin to pay spousal maintenance in the amount of $1,550 per month for thirty-six months and $1,000 per

month for an indefinite period thereafter. Although Martin requested findings of fact and filed a notice of past due filings, the trial court issued none.[1]

### CHARACTERIZATION OF SEPARATE PROPERTY AND REIMBURSEMENT

In his first point of error, Martin challenges the legal sufficiency of the evidence to support Margaret's reimbursement award. Specifically, he asserts Margaret did not sufficiently trace her allegedly separate property, and therefore did not overcome the presumption of community property. In other words, Martin complains the trial court abused its discretion when it confirmed $41,000 as reimbursement to Margaret's separate property estate.

### A. Standard of Review

Martin complains there is no evidence to support Margaret's separate property reimbursement claim. Trial courts are afforded broad discretion in dividing marital property upon divorce, and absent an abuse of discretion we will not disturb the property division. *Padon v. Padon*, 670 S.W.2d 354, 358 (Tex. App.—San Antonio 1984, no writ); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). A trial court abuses its discretion "when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles." *Tellez v. Tellez*, 345 S.W.3d 689, 690 (Tex. App.—Dallas 2011, no pet.). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision." *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.). Legal sufficiency is a relevant factor in our assessment of whether the trial court abused its discretion, but it does not constitute an independent ground of reversible error. *Id.*

When, as in this case, the trial court does not issue findings of fact and conclusions of law, we must presume "the trial court made all the findings necessary to support its judgment."

---

[1] Martin did raise the failure of the trial court to issue findings of fact.

*Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). If the evidence supports the trial court's implied findings, "we must uphold the judgment on any theory of law applicable to the case." *Garcia v. Garcia*, 170 S.W.3d 644, 648 (Tex. App.—El Paso 2005, no pet.).

**B.      Reimbursement**

A claim for reimbursement is an equitable claim arising upon dissolution of a marriage when funds from one marital estate have been expended to benefit another marital estate. *See id.* at 650; *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982). A spouse seeking reimbursement must establish that the contribution was made by one marital estate to another, that the contribution was reimbursable, and the value of the contribution. *See Vallone*, 664 S.W.2d at 457–59. In our review of the trial court's actions, we presume the trial court properly exercised its discretion. *Id.* at 460.

**C.      Characterization**

The character of marital property is determined by the inception of title rule. TEX. FAM. CODE ANN. § 3.006 (West 2011). Separate property includes property owned by a spouse before marriage and acquired by a spouse during marriage by gift, devise, or descent. *Id.* § 3.001; TEX. CONST. art. XVI, § 15. Community property is property acquired by either spouse during the marriage that is not separate property. TEX. FAM. CODE ANN. § 3.002. On dissolution of a marriage, all property possessed by either spouse is presumed to be community property. *Id.* § 3.003(a). To overcome this presumption, a spouse must generally trace and identify, by clear and convincing evidence, the property it claims is separate property. *Bahr v. Kohr*, 980 S.W.2d 723, 728 (Tex. App.—San Antonio 1998, no pet.); TEX. FAM. CODE ANN. § 3.003(b). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Boyd v. Boyd*, 131

S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). The clear and convincing evidence standard is generally "not satisfied by testimony that property . . . is separate property when that testimony is contradicted or unsupported by documentary evidence tracing the asserted separate nature of the property." *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

We recognize the trial court's mischaracterization of property upon dissolution of a marriage is not an automatic ground for reversal. *See Garza*, 217 S.W.3d at 549. The trial court abuses its discretion, and reversal is warranted, only when the error materially affects the just and right division of the community estate. *See id.* A *de minimis* effect does not require reversal. *Id.*

**D.    Analysis**

Because a reimbursement claim may arise when separate property is used to pay a community debt, we begin our analysis by determining whether there is some evidence to support the trial court's implied finding that $41,000 constituted Margaret's separate property. *See Vallone*, 644 S.W.2d at 459.

*1.    Characterization of Property as Separate Property*

At the dissolution of the marriage, all of Martin and Margaret's property was presumed to be community property. *See* TEX. FAM. CODE ANN. § 3.003(a). To rebut this presumption, Margaret was required to prove the separate character of the various funds she claimed to be her separate funds by clear and convincing evidence. *See id.* § 3.003(b); *Graves*, 329 S.W.3d at 139. It appears the trial court arrived at $41,000 by considering the following funds: $9,000 Margaret received as a bequest from her aunt during the marriage, $20,000 in two certificates of deposit (CDs), $10,000 in a savings account, and $2,000 in a brokerage account that Margaret owned

prior to the marriage.[2] With regard to the $9,000, Margaret introduced a photocopy of the check and a letter from her father describing the bequest. As to the remaining accounts, Margaret testified that they constituted her separate property. She produced statements of account for two share certificate/IRA accounts she claimed as her separate CDs. She introduced no other documentary evidence tracing the separate origin of the funds in these accounts.

Margaret's testimony and documentary evidence in the form of a photocopy of the check and a letter from her father sufficiently traced the separate nature of the $9,000. These documents established the separate origin of the funds by showing the time and means by which Margaret originally obtained possession of them. *See Boyd*, 131 S.W.3d at 612. The statements of account for the two CDs reflected account balances during the marriage. Thus, the documents failed to establish the separate origin of the funds because they did not show the time and means by which Margaret originally obtained possession of them. *See id.* Although Margaret testified she came into the marriage with the CDs, her testimony was contradicted by Martin's testimony that the CDs were created by monies obtained during the marriage.[3] *See Graves*, 329 S.W.3d at 139. Because Margaret's testimony was contradicted and "unsupported by documentary evidence tracing the asserted separate nature of the property," it was insufficient to trace the separate origin of the CDs. *See id.* As to the remaining accounts, Margaret introduced no documentary evidence establishing their separate nature. Therefore, Margaret did not clearly and convincingly establish the separate nature of the funds in the CDs, and savings and brokerage accounts, and thus failed to overcome the presumption of community property. *See id.*

---

[2] The record on appeal is unclear as to exactly what comprised the $41,000 that Margaret claims is her separate property. In oral argument, Margaret's counsel could not identify the specific separate property components that formed the basis of the reimbursement award.

[3] Margaret's testimony was also inconsistent as to the amounts in the certificate of deposit accounts. At various points in the record, Margaret agreed that the CDs contained $20,000. However, the court asked if both accounts contained $10,000. Margaret responded "No. No. One is $18,378.55. The other is $16,311.39."

Having determined that Margaret established the $9,000 was her separate property, we next examine whether the trial court's error in characterizing the property is of the magnitude to require reversal. *See Garza*, 217 S.W.3d at 549.

2.    *Harm Analysis*

Martin argues that the mischaracterization of $41,000 as separate property resulted in an 80/20 division of property, instead of the 60/40 division represented in the court's order, which requires reversal. We have held that $32,000 of the $41,000 was improperly characterized, and thus look to see if that affected the just and right division of the community estate.

The marital residence, valued at $140,000 and unencumbered by a mortgage, formed the bulk of the marital estate. According to the assets inventoried in the decree and the values set forth in the record, the marital estate contained assets worth approximately $225,000 and community debts totaling approximately $58,000—bringing the total value of the marital estate to roughly $167,000. Thus, $32,000 represents nearly 20% of the overall estate.

Therefore, we conclude that the mischaracterization of $32,000 had more than a *de minimis* effect on the trial court's just and right division of marital property. *See Monroe v. Monroe*, 358 S.W.3d 711, 718–19 (Tex. App.—San Antonio, pet. denied) (holding that a mischaracterization of property constituting less than 2% of the value of the entire estate had only a *de minimis* effect on the just and right division of the estate); *McElwee v. McElwee*, 911 S.W.2d 182 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (concluding that a mischaracterization of property valued at $45,000, and that resulted in a 64/36 division of property instead of the 61/39 division intended by the court, had more than a *de minimis* effect). Accordingly, we remand the cause for a just and right division. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). Because the case is being remanded for a just and right division,

we do not reach the issue of whether the trial court abused its discretion in ordering reimbursement from the community estate.

### SPOUSAL MAINTENANCE

In his second, third, and fourth points of error, Martin challenges the trial court's award of spousal maintenance.[4] Specifically, Martin contends the trial court abused its discretion by awarding maintenance because Margaret failed to rebut the presumption against spousal maintenance. He further asserts that the court failed to make a finding that Margaret suffered from a debilitating mental or physical disability, which is required for an award of spousal maintenance for an indefinite term.

Section 8.052 of the Texas Family Code states that once a trial court determines a spouse is eligible to receive spousal maintenance, it "shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors, including: (1) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage." TEX. FAM. CODE ANN. § 8.052(1).

Because the trial court cannot make a proper maintenance determination without considering the financial resources of each spouse upon dissolution of the marriage, and we are remanding the cause for a just and right division of the marital estate—which will affect the parties' financial resources—we reverse the portion of the trial court's order awarding spousal maintenance. Therefore, we do not address Martin's points of error pertaining to the spousal maintenance awards.

---

[4] At trial, when asked whether he was opposed to paying Margaret spousal maintenance, Martin replied that he was not opposed to paying maintenance, but that he was opposed to paying maintenance for more than three years.

**RELIGIOUS INSTRUCTION CLAUSE**

Martin contends the trial court violated the Establishment Clause of the First Amendment to the United States Constitution, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," by granting Margaret the right to take the children to religious education on Sunday mornings during weekends when Martin otherwise has possession of the children. *See* U.S. CONST. amend. I. Under the decree, Margaret may "pick up the children no earlier than 30 minutes before the religious education begins and shall return the children to Martin . . . no later than 30 minutes after the religious education ends." Martin asserts the decree favors Margaret's religious beliefs over his, thus violating the Constitution.

**A.      Standard of Review**

The primary consideration in determining managing conservatorship, possession, and support of and access to a child is what is in the best interest of the child. TEX. FAM. CODE ANN. § 153.002. "[B]ecause the trial court is in the best position to observe the demeanor and personalities of the witnesses and can feel forces, powers, and influences that cannot be discerned by merely reading the record," the trial court has broad discretion in determining what is in the child's best interest. *E.C., Jr., ex rel. Gonzales v. Graydon*, 28 S.W.3d 825, 829 (Tex. App.—Corpus Christi 2000, no pet.). This determination will be reversed only if the trial court abused its discretion. *See id.*

**B.      Analysis**

The final divorce decree provides that both parents, as joint managing conservators, have the right to direct the children's moral and religious training during their times of possession. It also contains a "Religious Education" clause that gives Margaret the right to pick the children up from Martin on Sunday mornings during weekends that he otherwise has possession to take the

children to religious classes. The clause further provides that on those Sundays, Martin's possession extends to 9:00 p.m. Martin contends this clause favors Margaret's religious beliefs by allowing Margaret to take the children to religious education during his times of possession.

Martin relies on *Rosenstein v. Rosenstein* to support his position. *Rosenstein v. Rosenstein*, 2011 WL 3546592, at *1 (Tex. App.—Fort Worth, Aug. 11, 2011) (mem. op.). *Rosenstein* involved the dissolution of a marriage and the possession order for the couple's two children. *Id.* The children's mother claimed the trial court abused its discretion and violated the Establishment Clause by awarding the children's father holiday possession based upon his Jewish religion. *Id.* at *8. The possession order granted the father possession of the children on Wednesday evenings and Sunday mornings from 8:30 a.m. to 1:00 p.m. so that he could take them to religious classes. *Id.* at *12–13. The order's "Provisions for Jewish Religious Holidays" provided that "[t]o the extent Jewish Religious Holidays conflict in any manner with other holidays or possession orders addressed herein, the following Jewish Religious Holiday possession order prevails." *Id.* This order gave the father exclusive periods of possession on the Jewish religious holidays of Rosh Hashanah, Yom Kippur, Hanukkah, and Passover. *Id.* at *13. The court noted that Christmas and Hanukkah celebrations, as well as Passover and Easter, often overlap, and held that the possession order violated the mother's rights under the Establishment Clause "[g]iven the total absence of evidence that [the mother's] religious preferences or preferences for no religion are illegal or immoral or otherwise present a danger to the children." *Id.* at *14.

The current case is distinguishable from *Rosenstein*. In *Rosenstein*, other than Easter and Christmas, the mother was given "no Sunday mornings, no Wednesday nights, and less than fifty percent of Sunday afternoons and nights, and all her periods of possession are subject to [the

father's] superior right of possession during four Jewish holidays, the extent of which [was] not made clear in the decree." *Id.* Thus, unlike the decree in *Rosenstein*, which deprived the mother of significant periods of possession, ultimately favoring the father's religious schedule over the mother's visitation times, the decree between Martin and Margaret does not favor either spouse's religious preference or preference for no religion, and gives Martin additional time to compensate for the periods when the children attend their religious classes.

Just as the court has discretion to mold the decree to accommodate activities such as soccer games and music lessons if it finds them in the child's best interest, it may accommodate a parent's desire for the children's religious education, provided that it does not favor one parent's religion over another or over a preference for no religion. Martin has not directed us to, nor have we located, any evidence in the record that the court's decreed visitation schedule, accommodating, *inter alia*, the children's current religious education, in any way favors Margaret's religion. Both parents are given the right to direct the children's religious education. Martin has additional time on Sundays to compensate for the time the children spend in religious studies on Sundays during his possession period. Therefore, the court did not abuse its discretion in crafting this visitation schedule and did not run afoul of the Constitution. Accordingly, we affirm the trial court's inclusion of the religious instruction clause.

## MORALITY CLAUSE

Martin contends the trial court violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by imposing a morality clause on the basis of gender. The divorce decree contains a "Morality Clause" in which the court orders that "no unrelated adult with whom Martin E. Roberts has a romantic relationship with shall be present in his home during the hours of 8:00 p.m. and 8:00 a.m. while he is in possession of the children."

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. At its core, it guarantees the equal treatment of similarly situated parties. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). A party asserting an equal protection claim must establish that: "(1) the party was treated differently than other similarly situated parties; and (2) the party was treated differently without a rational basis by the government." *Downs v. State*, 244 S.W.3d 511, 518 (Tex. App.—Fort Worth 2007, pet. ref'd).

Trial courts possess broad discretion "in fashioning restrictions on a parent's possession and access that are in the best interest of the children." *Moreno v. Perez*, 363 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Texas Rule of Appellate Procedure 38.1 provides that the appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). If the appellant contends the trial court abused its discretion, it is his burden to demonstrate in what manner the trial court acted arbitrary or unreasonably. *In re A.J.G.*, 131 S.W.3d 687, 691 (Tex. App.—Corpus Christi 2004, pet. denied).

The entirety of Martin's "argument" on this point of error is that imposing a morality clause on him without imposing the same on Margaret violates the Equal Protection Clause. Martin does not inform us and we cannot discern how the Equal Protection Clause is implicated. Because Martin fails to provide a clear and concise argument on this point of error and cites no authority to support his argument that the trial court's inclusion of a morality clause violated his

equal protection rights, Martin has waived his challenge on this ground. *See id.* at 691–92; TEX. R. APP. P. 38.1(h).

## CONCLUSION

We reverse the portions of the trial court's order confirming and ordering reimbursement for $41,000 of Margaret's separate property and ordering spousal maintenance, and remand the cause for a just and right division and a proper spousal maintenance determination. We affirm the remainder of the trial court's order.

Patricia O. Alvarez, Justice