

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00892-CV

**IN THE INTEREST OF L.M.R.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-02001
Honorable Peter A. Sakai, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: April 8, 2020

AFFIRMED

Appellant D.D. appeals the trial court's December 11, 2019 final order in a suit affecting

the parent-child relationship ("SAPCR") that appoints her possessory conservator of her child,

L.M.R., and appoints D.D.'s mother and L.M.R.'s maternal grandmother, J.G., as L.M.R.'s non-

parent permanent managing conservator. We affirm the trial court's order.

### BACKGROUND

D.D. is the mother of two children, C.D. and L.M.R. In June of 2018, the Department of

Family and Protective Services ("the Department") attempted to work services with D.D.'s family

after receiving reports of domestic violence between D.D. and L.M.R.'s father, L.R. The

Department also received reports that D.D. used illegal drugs, had attempted suicide, and had

expressed suicidal ideations. On December 5, 2018, the Department removed the children from D.D.'s custody because D.D. overdosed and was hospitalized in a mental health facility.

D.D. and the children lived with J.G. for a significant portion of the children's lives. After the Department removed the children, it placed them with J.G. and filed a petition to terminate the parental rights of D.D., L.R., and C.D.'s father, H.T. However, the Department eventually abandoned its request to terminate the parents' rights, and C.D moved to California to live with H.T.[1] J.G. intervened in the case and sought sole managing conservatorship of L.M.R. The Department agreed that J.G. should be named permanent managing conservator of L.M.R., and it recommended possessory conservatorship for D.D. and L.R.

On December 11, 2019, the trial court signed a final order appointing J.G. as L.M.R.'s permanent managing conservator and D.D. and L.R. as possessory conservators. The court found that appointing either D.D. or L.R. as managing conservator would not be in L.M.R.'s best interest because that appointment would significantly impair L.M.R.'s physical health or emotional development. The trial court ordered that D.D. would have possession of and access to L.M.R. for four hours per week and prohibited D.D. from residing or staying overnight in the home where L.M.R. lives. It also ordered J.G. to supervise D.D.'s visits with L.M.R. While D.D. appealed the trial court's order, L.R. did not.[2]

**ANALYSIS**

*Standard of Review*

We review a trial court's orders regarding conservatorship of a child for abuse of discretion. *In re R.J.*, 381 S.W.3d 619, 622 (Tex. App.—San Antonio 2012, no pet.). "In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion." *In re I.Z.K.*,

---

[1] On September 25, 2019, the trial court severed the cases involving C.D. and L.M.R. D.D.'s appeal of the trial court's final SAPCR order regarding C.D. is currently pending in this court in Cause Number 04-19-00866-CV.
[2] L.R. filed a brief adopting the Department's arguments on appeal.

No. 04-16-00830, 2018 WL 1176646, at *2 (Tex. App.—San Antonio Mar. 7, 2018, no pet.) (mem. op.) (internal quotation marks omitted). A trial court does not abuse its discretion so as to require reversal unless it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Alvarez v. Alvarez*, No. 04-13-00787-CV, 2015 WL 1938700, at *1 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). A trial court has "wide latitude" on issues of custody, control, possession, and visitation. *Brendel v. Brendel*, No. 04-08-00883-CV, 2009 WL 3789604, at *1 (Tex. App.—San Antonio Nov. 11, 2009, no pet.) (mem. op.). This standard of review recognizes that the trial court "is in the best position to observe the demeanor and personalities of the witnesses and can feel forces, powers, and influences that cannot be discerned by merely reading the record." *Roberts v. Roberts*, 402 S.W.3d 833, 841 (Tex. App.—San Antonio 2013, no pet.) (internal quotation marks omitted).

*Applicable Law*

In a termination proceeding, if the trial court does not order termination of the parent-child relationship, it shall either (1) deny the Department's petition or (2) render any order in the best interest of the child. TEX. FAM. CODE ANN. § 161.205; *In re M.I.A.*, No. 04-19-00227-CV, 2019 WL 5030241, at *9 (Tex. App.—San Antonio Oct. 9, 2019, no pet.). In all cases involving conservatorship of a child, the best interest of the child must be the trial court's primary concern. TEX. FAM. CODE ANN. § 153.002; *Roberts*, 402 S.W.3d at 841. "It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE ANN. § 153.131(b). However, that presumption is overcome if the trial court "finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *Id.* § 153.131(a).

*Application*

D.D. argues that legally and factually insufficient evidence supports the trial court's finding that appointing her as managing conservator would significantly impair L.M.R.'s physical health or emotional development. The Department responds that the evidence supports the trial court's ruling and the court therefore did not abuse its discretion.

The Department caseworker who was assigned to this case testified that D.D. endangered her children by, inter alia, failing to maintain a safe and stable home, using fake urine in drug tests, engaging in criminal activity, and continuing an on-and-off-again relationship with L.R. even though she claimed he abused her. The caseworker also noted that during the course of this case, D.D. was hospitalized several times for suicidal ideations and once attempted suicide. In addition, the caseworker reported that D.D.'s older child, C.D., had told his after-school teacher and his father that he wanted to kill himself. Based on her observations, the caseworker did not believe D.D. demonstrated an ability to change the behavior that led to the children's removal. She noted, for example, that D.D. had held "[a]t least five" different jobs over the course of this case and that D.D. sometimes cancelled visits with the children because she reported being "too emotional" for a visit. She also testified that she did not believe D.D. had adequately treated her mental health conditions or shown that she can provide a safe and stable home environment for children. The caseworker testified that she believes D.D. could pose a risk to the children if she were awarded unsupervised visits with them. The caseworker agreed, however, that D.D. loves her children and "interact[s] well" with L.M.R.

The Department also expressed concern about a June 4, 2019 incident in Lookout Comanche Park that ended with D.D.'s arrest. The arresting officer, San Antonio Police Department Detective James Burnette, testified that he was called to the park to investigate "a lady in a car with a gun." Detective Burnette testified that the woman he encountered "was extremely drunk, acting like a drunk acts, very irrational, combative, argumentative" and that she said "something to [the] effect" of asking him to shoot her. He also testified that she threatened, swore,

and spit at him and his partner, and that she used a racial slur against his partner. At trial, Detective Burnette was unable to positively identify D.D. as the woman he arrested, but his police report identifying her by her full name and describing her actions that night was admitted into evidence.

D.D.'s therapist, Glenn Tisdale, testified that D.D. told him she put a gun in her mouth and pulled the trigger. *See In re R.R.*, No. 02-13-00464-CV, 2014 WL 3953930, at *3 (Tex. App.—Fort Worth Aug. 14, 2014, no pet.) (mem. op.) (identifying parent's "history of mental disorders [and] suicidal thoughts" as relevant to best interest determination). Tisdale also testified that D.D. told him she did not want the responsibility of being a mother, and she acknowledged that "[o]n some occasions" it was unsafe for her to be around her children. Tisdale testified D.D. had been stable for approximately 60 days before trial but "the pattern is that [stability has] not always been present." He noted that she had been manic or unstable "more than half of the times" he had seen her. He also testified that if D.D. does not take her prescribed medications, "there is a chance or risk factor for . . . stress or frustration to be present with [the] children." Based on these observations, Tisdale believed D.D.'s visits with the children should be supervised.

D.D.'s current boyfriend testified that he called the police during the June 4 incident in the park, that he owned the rifle the police removed from D.D. at that time, and that D.D. had taken the rifle from him. He testified that D.D. "had a lot of anger toward herself," but she is taking her medication regularly and is more stable now than she was at the beginning of their relationship. He does not believe she poses a danger to the children or anyone else and testified that "since she's been with me, she's had more stability." He believed it would be appropriate for D.D. to have unsupervised access to her children for an extended period of time. He acknowledged, however, that at the time of trial, he and D.D. had only been together for approximately four months.

D.D. described the June 4 incident as "a mental breakdown" that occurred because she "was internalizing all of the negative things that were said about [her]" during a hearing in this case that occurred earlier that day. She testified that since then, she has been put on a medication

regimen that makes her "completely able, stable, capable." She told the trial court she has "learned a lot of coping skills" over the course of this case and that she does not believe her access to her children should be limited or supervised.

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its ruling, even if the record contains conflicting evidence. *In re H.N.H.*, No. 04-18-00574-CV, 2019 WL 2996972, at \*2 (Tex. App.—San Antonio July 10, 2019, no pet.) (mem. op.). Here, although both D.D. and her current boyfriend testified that D.D.'s mental health had stabilized, other witnesses testified that D.D.'s stability is "mostly up and down" and that she exhibited erratic and dangerous behavior during the pendency of this case. Based on this evidence, we hold the trial court did not abuse its discretion by finding that appointing D.D. as a managing conservator would significantly impair L.M.R.'s physical health or emotional development and was therefore not in L.M.R.'s best interest. *See* TEX. FAM. CODE § 153.131. Accordingly, we overrule D.D.'s sole issue on appeal.

## CONCLUSION

We affirm the trial court's December 11, 2019 final order in a suit affecting the parent-child relationship.

Beth Watkins, Justice