

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00374-CV

**IN THE INTEREST OF C.E.R.**, T.J.S., M.I.S., and J.L.L. Jr., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA00131
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:  Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: November 30, 2022

AFFIRMED

Appellant S.M. (Mother) appeals the trial court's July 6, 2022 final order in a suit affecting the parent-child relationship (SAPCR) that appoints her possessory conservator of her children C.E.R. (born 2013), T.J.S. (born 2014), M.I.S. (born 2015), and J.L.L. Jr. (born 2017).[1] We affirm the trial court's order.

### BACKGROUND

On January 21, 2020, the Texas Department of Family and Protective Services removed the children from Mother's and J.L.'s care on allegations that C.E.R. and T.J.S. had been hit by a belt and injured, T.J.S. had been physically abused and neglectfully supervised, and M.I.S. had

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

been medically neglected. The Department obtained temporary managing conservatorship over all four children, placed them in foster care, and filed a petition to terminate the parental rights of Mother, C.R. (C.E.R.'s father), J.S. (T.J.S.'s and M.I.S.'s father), and J.L. (J.L.L. Jr.'s father). During the investigation, the Department placed C.E.R., T.J.S., and M.I.S. with T.J.S. and M.I.S.'s paternal aunt (Aunt) and placed J.L.L. Jr. with his paternal grandmother (Grandmother). The Department also created a family service plan for all parents. Mother's service plan required her to, inter alia, complete a psychological evaluation, therapy, and a domestic violence class, and also to demonstrate that she had stable housing and employment as a condition of reunification.

Nearly two years after removal, the trial court began a four-day bench trial at which Mother appeared. The trial started on November 29, 2021, continued on February 25, 2022 and April 29, 2022, and ended June 15, 2022. By the time of the first trial setting, the Department no longer sought termination of Mother's parental rights—the Department sought reunification subject to successful unsupervised visits. By the second setting, the Department considered reunification "unworkable." The trial court stated it had "all options for permanency and the best interest of the children available to it." When the trial commenced in earnest, the trial court heard testimony from four witnesses: (1) the Department's caseworker Sharetta Smith; (2) Aunt; (3) Grandmother; and (4) Mother. At the conclusion of trial, the court signed an order appointing: Mother possessory conservator of all four children; Aunt permanent managing conservator of C.E.R., T.J.S., and M.I.S.; and Grandmother and J.L. joint managing conservators of J.L.L. Jr. The trial court also appointed C.R. possessory conservator of C.E.R and J.S. possessory conservator of T.J.S. and M.I.S.

Mother appeals in two issues. She argues that: (1) the evidence is factually insufficient to support the trial court's decision that appointing her as managing conservator would significantly impair the children's physical health or emotional development; and (2) the trial court erred in

appointing a nonparent managing conservator to J.L.L. Jr. without an express finding that appointing Mother a managing conservator of J.L.L. Jr., would significantly impair J.L.L. Jr.'s physical health or emotional development.

## ANALYSIS

### *Conservatorship of the Children*

*Applicable Law and Standard of Review*

Under the Texas Family Code, "[i]f the court does not order termination of the parent-child relationship, the court shall: (1) deny the petition; or (2) render any order in the best interest of the child." TEX. FAM. CODE ANN. § 161.205. "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. "It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE ANN. § 153.131(b). However, that presumption is overcome if the trial court finds by a preponderance of the evidence that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development. TEX. FAM. CODE ANN. § 153.131(a); *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *see also* TEX. FAM. CODE ANN. § 105.005.

"As conservatorship determinations are intensely fact driven, the trial court is in the best position to observe the demeanor and personalities of the witnesses and can feel the forces, powers, and influences that cannot be discerned by merely reading the record." *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (internal quotation marks and citation omitted). "A trial court's determination of what is in the child's best interest, specifically the establishment of terms and conditions of conservatorship, is a discretionary function." *Id.*

"In family law cases, the abuse of discretion standard of review overlaps with traditional standards of review." *In re L.C.L.*, 396 S.W.3d 712, 716 (Tex. App.—Dallas 2013, no pet.). Sufficiency of the evidence is not an independent ground of error but is a factor relevant to an appellate court's assessment of whether the trial court abused its discretion. *Id*. "To determine whether the trial court abused its discretion, an appellate court considers whether the trial court had sufficient evidence on which to exercise its discretion and erred in its exercise of that discretion." *Id*. "As long as some evidence of a substantive and probative character exists to support the trial court's judgment, an appellate court will not substitute its judgment for that of the trial court." *Id*. In such a case, the trial court has not acted arbitrarily or unreasonably. *In re J.J.R.S.*, 627 S.W.3d at 218.

*Application*

Although this case started as a termination proceeding, the trial court did not order termination. It therefore had the option to deny the petition or render an order in the best interest of the children, and it chose the latter. TEX. FAM. CODE § 161.205; *In re A.D.*, 480 S.W.3d 643, 645 (Tex. App.—San Antonio 2015, pet. denied); *see also* TEX. FAM. CODE § 153.002. It recognized the presumption in favor of naming Mother managing conservator but found that presumption overcome because naming Mother managing conservator would significantly impair the children's physical health or emotional development. TEX. FAM. CODE § 153.131(a). For several reasons, we conclude the trial court did not abuse its discretion in making that factual determination. *In re J.J.R.S.*, 627 S.W.3d at 218.

First, the trial court had "sufficient evidence on which to exercise its discretion." *In re L.C.L.*, 396 S.W.3d at 716. The Department presented evidence that Mother either injured T.J.S.

by striking him with a belt or falsely took responsibility for striking T.J.S. with a belt. She was placed on deferred adjudication for injuring T.J.S. At trial, Mother herself admitted injuring T.J.S.

It is undisputed that Mother completed all aspects of her family service plan. The Department sought a monitored return of the children to Mother's care in the fall of 2021, but Mother refused the Department's caseworker access to the home until February 2022, at which time it was not ready for the children to live there. During a February 2022 visit, Mother's home reeked of dog urine and feces, did not have enough beds for the children, and the electricity did not work in the portion of the home where the children's bedrooms were located. Mother admitted that although the Department had been working with her since 2020, she did not cooperate with the Department on home visits because she did not have an appropriate home until May 2022. Mother did not comply with the providing of a safe, stable environment until a few months before trial.

After the home was ready, unsupervised visits—the key to reunification—had ended because C.E.R. claimed Mother told him to say that he had been hit by Aunt in order to come home. And, according to the caseworker, supervised visits did not occur "due to [Mother] having issues with her phone . . . . And so, there was no way for us to even really, I guess, get started on that monitored return for these children." The Department had not seen enough "longevity of her stability and maintaining her -- you know, her home life" to "send those kids home." The caseworker testified that the Department had not been able "to establish stability in [Mother's] efforts. So it's kind of hard to say where she is as far as being able to care for four children."

In contrast, Mother testified that she knew C.E.R. alleged she had told him to make up an allegation against Aunt. Mother, however, argues that she never told C.E.R. to make up any allegations, that her home was ready, and that she complied with the terms of her probation. She argues that the reasons she had difficulty complying with the requirements of the monitored return

were external—C.E.R.'s allegation that she had told him to lie; her own physical illness, which required intermittent hospitalization; and her unreliable cell phone service—and beyond her control.

The Department also presented evidence that the children had thrived in their current placements. Aunt testified that C.E.R., T.J.S., and M.I.S. were doing "great" in her home, and that they are happy and healthy. Aunt concluded that Mother loves her children, and her children love her and belong with her, but Mother "needs time to get a little bit more stable ground where she's not so dependent on other people." Grandmother testified that J.L.L. Jr. has lived with her since the beginning of this case. She testified that J.L.L. Jr. is "perfect. He's his own little man." She has enjoyed having him in her home and was willing to be appointed joint managing conservator alongside J.L. if the trial court did not appoint J.L. sole managing conservator. Grandmother testified that Mother's three other children see her as their grandmother, and she would maintain contact between them and J.L.L. Jr.

Second, the trial court, furnished with "sufficient evidence on which to exercise its discretion," did not err "in its exercise of that discretion." *Id.* "The trial court does not abuse its discretion if some evidence of a substantive and probative character supports its ruling, even if the record contains conflicting evidence." *In re H.N.H.*, No. 04-18-00574-CV, 2019 WL 2996972, at *1 (Tex. App.—San Antonio July 10, 2019, no pet.) (mem. op.). The evidence of Mother's acts and omissions, coupled with the testimony that the children were all doing well and were stable in their current environments, constitutes some evidence of a substantive and probative character to support the trial court's finding that Mother's appointment as managing conservator would significantly impair the children's physical health or emotional development. *See Danet v. Bhan*, 436 S.W.3d 793, 798 (Tex. 2014) (per curiam) (holding "evidence of misconduct in the more distant past, evidence of more recent misconduct, and evidence of the stability of the child's current

placement" supports jury's substantial impairment finding). In ruling, the trial court expressly mentioned the emotional harm that could result from the children's separation from those who have cared for them, noting "there has been a non-parent conservator of these children for two years, over two years" and in that time "they've attached, they've bonded, there's feelings, they are human beings. And that needs to be respected." Instead of acting arbitrarily or unreasonably, the trial court acted within its broad discretion in finding, by a preponderance of the evidence, that appointing Mother managing conservator would significantly impair the children's physical health or emotional development. *In re J.J.R.S.*, 627 S.W.3d at 218; *In re H.N.H.*, 2019 WL 2996972, at *1. We overrule Mother's first issue.

### Omitted Findings Regarding Conservatorship of J.L.L. Jr.

#### Applicable Law

If the trial court does not file findings of fact and conclusions of law, we must presume the trial court made all findings necessary to support the judgment. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.) (en banc). "If the evidence supports the trial court's implied findings, we must uphold the judgment on any theory of law applicable to the case." *Roberts*, 402 S.W.3d at 838 (internal quotation marks omitted).

#### Analysis

The trial court did not make an express finding that appointing Mother as managing conservator of J.L.L. Jr. would significantly impair his physical health or emotional development. But that finding is necessary to support the judgment, and we must therefore presume the trial court made it. *See* TEX. FAM. CODE § 153.131(a); *Worford*, 801 S.W.2d at 109; *Roberts*, 402 S.W.3d at 838. And, as discussed above, the trial court's finding that Mother's appointment as managing conservator would significantly impair the children's physical health or emotional

development was not an abuse of discretion. We therefore overrule Mother's second issue. *Roberts*, 402 S.W.3d at 838.

## CONCLUSION

We affirm the trial court's July 6, 2022 Final Order in Suit Affecting the Parent-Child Relationship.


Beth Watkins, Justice