

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-23-00828-CV

**IN THE INTEREST OF R.P.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01371
Honorable Raul Perales, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: June 20, 2024

AFFIRMED

We issued our original majority opinion in this case on February 28, 2024. Appellee filed a motion for rehearing and motion for en banc reconsideration. We withdraw the previous majority opinion of February 28, 2024, issue this opinion on rehearing, and grant Appellee's motion for rehearing. Appellee's motion for en banc reconsideration has been denied as moot.

In this suit affecting Mom's relationship with her son, R.P.,[1] Mom successfully completed the Department's service plan in her bid for reunification. What proved insurmountable in the time before trial was her son's lasting emotional trauma from her previous neglectful supervision. Even after R.P. worked with a licensed therapist and a life skills coach for many months, R.P.

---

[1] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

expressed suicidal thoughts about reuniting with Mom. In that context, the trial court found that reunification was not in R.P.'s best interest. The trial court granted permanent managing conservatorship to R.P.'s aunt and no possessory rights to Mom. On appeal, Mom contends that the evidence presented by the Department does not justify the trial court's ruling. Because the trial court has broad discretion to enter any order in the child's best interest under section 161.205 of the Texas Family Code and because we must construe implied findings in favor of the judgment, we affirm the trial court's ruling.

## BACKGROUND

When R.P. was thirteen years old, he was removed from Mom due to her neglectful supervision. At the time, Mom struggled with drug abuse and was unable to maintain running water or electricity at home. The Department placed R.P. with his paternal aunt (R.P.'s father is deceased) and began working with Mom on a service plan.

Mom successfully completed her service plan and entered a work training program. Her caseworker agreed at trial that Mom's improvement was dramatic—among the best. By the time of trial, the Department was not seeking termination of Mom's parental rights. However, R.P. (14 years old at the time of trial) harbored resentment about his past homelessness with Mom and her drug abuse, and he refused to see Mom. He expressed suicidal feelings regarding reunification.

Mom's attorney argued that the Department and its agents did not make a sufficient effort to bring R.P. and Mom together before trial. But everyone who worked with R.P. during this case—his licensed counselor, his life skills coach, his attorney ad litem, and his aunt—agreed that R.P. absolutely rejected reunification. R.P.'s licensed counselor testified, and his attorney ad litem later argued, that he was emotionally unprepared to reunite. During closing statements, the Department requested that the trial court defer to the therapists' and R.P.'s aunt's insights and

recommendations. R.P.'s attorney ad litem asked that the trial court not force reunification before R.P. was ready.

Even before closing arguments, the trial court indicated that it would not reunite Mom and R.P. before R.P. was ready. In its final order, the trial court granted sole managing conservatorship to R.P.'s aunt with no possessory rights or access for Mom. This appeal followed.

## STANDARD OF REVIEW

"The trial court is vested with broad discretion in making decisions on custody, control, possession, and visitation, and we review such decisions for an abuse of discretion." *C.W. v. B.W.*, No. 02-19-00270-CV, 2020 WL 4517325, at *2 (Tex. App.—Fort Worth Aug. 6, 2020, no pet.) (mem. op.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

In reviewing the trial court's decision, we consider both express and implied findings in support of the judgment. *See Mauldin v. Clements*, 428 S.W.3d 247, 265 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re C.E.R.*, No. 04-22-00374-CV, 2022 WL 17332598, at *4 (Tex. App.—San Antonio Nov. 30, 2022, no pet.) (mem. op.) (citing *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.)).

In general, "[a] trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its ruling, even if the record contains conflicting evidence." *In re L.M.R.*, No. 04-19-00892-CV, 2020 WL 1695505, at *2 (Tex. App.—San Antonio Apr. 8, 2020, no pet.) (mem. op.) (citing *In re H.N.H.*, No. 04-18-00574-CV, 2019 WL 2996972, at *2 (Tex. App.—San Antonio July 10, 2019, no pet.) (mem. op.)).

## BEST INTEREST OF R.P.

### A.    Parties' Arguments

Mom argues that the trial court abused its discretion by not appointing her as a conservator or granting her access to R.P. In support of her argument, she cites Texas Family Code sections

153.193 (requiring minimal restrictions on a parent's possession or access) and 153.002 (requiring the best interest of the child to be the primary consideration in conservatorship, possession, and access determinations). The Department argues that denying Mom conservatorship and access to R.P. was necessary for R.P.'s emotional and physical wellbeing.

**B.     Law**

*1.  Overcoming the Parental Presumption*

"In a termination proceeding, if the trial court does not order termination of the parent-child relationship, it shall either (1) deny the Department's petition or (2) render any order in the best interest of the child." *In re L.M.R.*, 2020 WL 1695505, at *2 (citing TEX. FAM. CODE ANN. § 161.205); *accord In re C.E.R.*, 2022 WL 17332598, at *2.

The best interest of the child is presumed to be served by appointing the parent as managing conservator under section 153.131(b) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 153.131(b); *Interest of A.M.T.*, 592 S.W.3d 974, 976 (Tex. App.—San Antonio 2019, pet. denied). That is, "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a); *C.O. v. Tex. Dep't of Family & Protective Services*, No. 03-21-00453-CV, 2022 WL 413374, at *1 (Tex. App.—Austin Feb. 11, 2022, no pet.) (mem. op.).

The Texas Supreme Court has specified that such a finding "requires the nonparent to offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990) (precluding paternal grandparents from winning custody of a child from Mom after she was abused by Dad throughout their relationship); *see also In re F.N.*, 579 S.W.3d 74, 77 (Tex. 2019) (op. denying pet.) (applying *Lewelling* to TEX. FAM. CODE ANN.

§ 153.131(a)); *A.S. v. Tex. Dep't of Family & Protective Services*, 665 S.W.3d 786, 796 (Tex. App.—Austin 2023, no pet.) (same). *But see In re Rodriguez*, 940 S.W.2d 265, 273 (Tex. App.—San Antonio 1997, writ denied) (declining "to engraft the *Lewelling* language onto the section 153.131").[2]

The *Lewelling* metric *can* be met with evidence of a parent's past drug abuse. *See In re F.N.*, 579 S.W.3d at 77 n.5; *In re B.B.M.*, 291 S.W.3d 463, 468–69 (Tex. App.—Dallas 2009, pet. denied); *In re De La Pena*, 999 S.W.2d 521, 529 (Tex. App.—El Paso 1999, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). But many courts have cited and/or followed intermediate court precedent *May v. May*, which holds in part that "the material time concerning fitness for child custody is the present," meaning that "[i]f the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling." *Id.*; s*ee also Critz v. Critz*, 297 S.W.3d 464, 475 (Tex. App.—Fort Worth 2009, no pet.); *C.O.*, 2022 WL 413374, at *4–9; *In re M.L.*, No. 02-15-00258-CV, 2016 WL 3655190, at *4 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.) (citing *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.)).

We, of course, note that *May v. May* qualified its holding, leaving room for a trial court's discretion: it stated "that an adult person's future conduct may well be measured by his recent deliberate past conduct as it may be related to the same or a similar situation." *May*, 829 S.W.2d at 377 (citing *De Llano v. Moran*, 160 Tex. 490, 333 S.W.2d 359, 361 (1960)). In *May*, the reviewing court considered that the father testified to being "clean and straight for the last two

---

[2] The Thirteenth Court of Appeals in *Gray v. Shook* considered *In re Rodriguez*'s characterization of section 153.131 to be a "blatant misstatement of the law." *See Gray v. Shook*, 329 S.W.3d 186, 197 (Tex. App.—Corpus Christi–Edinburg 2010), *aff'd in part, rev'd in part*, 381 S.W.3d 540 (Tex. 2012). We agree.

years," but deferred to the trial court's determination that the father's appointment as managing conservator would significantly impair his children's emotional development because "there was no evidence that [he] had rehabilitated or that [his] future drug use [was] unlikely." *Id*. at 378.

### 2. *Best Interest After the Parental Presumption Is Overcome*

If the parental presumption is overcome, then the foundation has been laid for the trial court to conclude that unrestricted possession would endanger the physical or emotional welfare of the child. *See In re Walters*, 39 S.W.3d 280, 286 (Tex. App.—Texarkana 2001, no pet.); *Hopkins v. Hopkins*, 853 S.W.2d 134, 138 (Tex. App.—Corpus Christi–Edinburg 1993, no writ). But if the trial court completely denies a parent possession and access, it must be because the case nearly resulted in termination. *See In re C.L.J.S.*, No. 01-18-00512-CV, 2018 WL 6219615, at *5 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet.) (mem. op.); *accord Philipp v. Tex. Dep't of Family & Protective Services*, No. 03-11-00418-CV, 2012 WL 1149291, at *8 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.); *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *9 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.).

In general, the family code requires minimal restrictions on a parent's possession or access to their child. *See* TEX. FAM. CODE ANN. § 153.193; *In re C.L.J.S.*, at *5; *Fish*, 2010 WL 5019411, at *8–9. But it also requires the best interest of the child to be the primary consideration in conservatorship, possession, and access determinations—an area in which the trial court exercises broad discretion. *See* TEX. FAM. CODE ANN. § 153.002; *Messier v. Messier*, 389 S.W.3d 904, 908 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *King v. King*, No. 03-22-00329-CV, 2023 WL 3873496, at *7 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.).

In making these determinations, "[c]ourts may use the non-exhaustive list of *Holley* factors to determine the child's best interest. *In re S.D.A.*, 587 S.W.3d 484, 491 (Tex. App.—El Paso 2019, no pet.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)).

**C.    Analysis**

*1.    Case Summation*

At the outset of this case, the Department filed a petition for conservatorship of R.P. and termination of Mom's parental rights due to Mom's struggles with drug addiction and neglectful supervision of R.P.   The petition faced Mom with a choice: overcome her struggles or face termination of her parental rights to R.P.

Over the course of the case with the Department, Mom undisputedly succeeded in completing her service plan.   The Department agreed that her improvement during the case was one of the best improvements it has seen, and it explicitly did not pursue termination of her rights at trial.   Instead, the Department presented evidence that R.P. was not emotionally ready to return to Mom's care.   It requested that R.P.'s paternal aunt be awarded permanent managing conservatorship and that R.P. not be required to visit with Mom until R.P.'s therapist deemed him ready.

*2.    Trial Testimony*

a.    Department's Caseworker

The Department first presented testimony from the caseworker in Mom's and R.P.'s case who stated she feared that R.P. would commit suicide if returned to Mom because of his memories of his past unstable life with her.   She testified that R.P. was refusing to see Mom or to accept any alternate forms of communication with her, such as video calls or any kind of mediated calls with the caseworker or a therapist.

During her testimony, the caseworker agreed that Mom repeatedly requested counseling with R.P. but that it did not occur because R.P. would shut down and become depressed when anyone talked to him about Mom.   According to the caseworker, it was unclear how long it would take R.P. to accept communication with Mom; she agreed it could take a month or even five years.

But she also testified that Mom's home seemed safe and appropriate and that she had no concerns that Mom would hurt R.P. She agreed that Mom's completion of her service plan would normally result in reunification.

### b. R.P.'s Life Skills Coach

The Department next presented testimony from R.P.'s life skills coach. She stated that she had been working with R.P. on coping with his strong negative feelings for Mom for about seven months by the time of trial. She testified that she was not qualified to offer diagnoses or predictions for R.P., but she identified the source of his strong negative feelings for Mom as her previous drug use and their previous homelessness.

### c. R.P.'s Licensed Professional Counselor

Next, R.P.'s licensed professional counselor testified that she had been working with R.P. for eight months and that she diagnosed R.P. with adjustment disorder with depressive symptoms. She explained that "when someone goes through a transition or a trauma, something traumatic, they can display different types of symptoms such as depression, anxiety[, and/or] behavioral conduct [sic]." She stated that R.P. displayed depressive symptoms, such as suicidal ideation, anger, and irritability, that she predicted would increase if he were returned to Mom's custody because he feared homelessness and "things he had to experience while living with her."

R.P.'s counselor testified that she addressed Mom's changes with R.P.—that Mom was no longer homeless and had completed classes to address her drug addiction. However, R.P.'s counselor testified that she did not address Mom's work training program with R.P. because she was unaware of it.

Overall, R.P.'s therapist believed that visitation with Mom should not occur unless recommended by a therapist at a later time. She agreed that, in cases where a child has an issue with a parent that is not rooted in physical or sexual abuse, it would normally be recommended for

a parent to participate in counseling with the child.  But she conceded that it was not done in this case, though Mom requested it.

### d.  R.P.'s Aunt

After R.P.'s counselor testified, the Department called his aunt.  R.P.'s aunt testified that R.P. had been living with her for nearly eleven months at the time of trial.  She agreed that she was willing to care for R.P. and that she would keep R.P. enrolled in therapy to facilitate future visitation with Mom.  She testified that she tried to talk to R.P. about Mom, but that he would cry and become depressed when she raised the issue.  She stated that he expressed suicidal feelings about the thought of returning to Mom because he feared homelessness.  The aunt said that she offered to take R.P. to see Mom's apartment, but that he refused.

### e.  Mom

Mom testified last.  She stated that she had been clean and sober for ten months leading up to trial.  She stated that she had enrolled in a work training program that promised to place her in a part-time custodial job at its conclusion.  She testified that she was renting a two-bedroom apartment in the hopes that R.P. would reunite with her and live there.  She stated that she understood R.P. felt stable with his aunt and wanted to stay there, but that she believed she could provide for R.P. and wanted to rebuild her relationship with him.

### 3.  *Trial Court's Ruling*

After the close of evidence, but before closing arguments, the trial court commended Mom on her progress but stated that it would place R.P. with his aunt.  The trial court stated that it would confer with R.P. and then issue the final order.  In full, the trial court stated the following:

> Okay.  And as I indicated prior to getting started, I do want to speak
> to [R.P.].

It's been several months, three months—over three months since I spoke to him, and he was quite clear at that time what his wishes were; but I do want to broach the subject with him again.

And I do want to say this: Primarily what the Court has to determine today is what's proper going forward with regard to visitation. And I don't want to not broach this subject.

[Mom], you've made incredible progress. I don't think anybody has said otherwise throughout this whole process. And I really wish we weren't here having this issue. I really wish [R.P.] was [sic] in a space mentally, emotionally in a different space.

I want to thank you for your courage for working the programs. You've never been dishonest with the Court, I never felt.

In previous hearings you acknowledged the difficulty in dealing with the death of [R.P.'s] father. You've acknowledged not being there for [R.P.], and we've talked about the lack of trust that he's displaying right now. And that's one of the things that makes, I think, this difficult. I think everybody that's worked with you, that's worked with [R.P.] has worked with the ultimate of trying to bridge that relationship to try and get it started to heal again.

No matter what happens today, the door isn't closed because they're not asking for termination.
Okay? I want to see what can be done in speaking to [R.P.], if anything right now, to facilitate creating that bridge.

And I'm not an expert, but I am concerned when the child starts talking about hurting himself, and it's something that I've heard from him. I agree with [Mom's attorney] that it's going to be difficult to get past that if it's not addressed at some point; but in the back of my mind, when I spoke to him, a lot of his anger and resentment is that there was no one to trust. And so that's part of the dynamic that we're dealing with today. So, I'm going to—I'm going to speak to R.P.

I will say this: One of the things that he made very clear to me that was weighing on him was this case being open. And I'm, frankly, going to tell him that he's going to stay with [his aunt]. That's not changing today. And the State is getting out of the way, and maybe that will provide some comfort to him.

I'm going to indicate that what I heard and that what I've heard for some time is that you've made tremendous progress; that you have

shown great stability; that you're making great progress on yourself, and that's all I wanted to say.

Because I see the frustration on your face, and I understand it. I think we all do. I think we all do.

And I appreciate [Mom's attorney] making sure that we had a hearing so that everyone could be aware, but certainly I think everybody here knows what you've done and the work you've put in.

And the door isn't closing today. I'm going to speak to [R.P.] and then I'll issue my ruling.

[Mom's attorney], I'll ask you this—and I don't know if you're prepared to answer this right now—but if we are talking therapy going forward, I'd like for you to provide some suggestions as to what you think might be beneficial. It doesn't have to be right now if you're not prepared for that, but maybe you guys have some ideas that the State hasn't broached.

In the final order, the trial court awarded R.P.'s aunt sole managing conservatorship. It denied Mom possessory conservatorship and any other possession or access. Mom requested findings of fact and conclusions of law and later filed a reminder notice, but the trial court never issued any findings or conclusions.

### 4. *De Novo Hearing*

The trial court held a de novo hearing with a different presiding judge the following month, during which Mom argued that the law could not support the final order that denied her possession of and access to R.P. The trial court denied relief but ordered updates from the therapist as to reunification status periodically.

### 5. *Review on Appeal*

#### a. Overcoming the Parental Presumption

Here, the trial court found that "appointment of the parent or parents as managing conservator of the child is not in the best interest of the child because the appointment would

significantly impair the child's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 153.131(a). It did not elucidate the basis for its finding, but we consider implied findings in support of the judgment. *See Mauldin*, 428 S.W.3d at 265.

It is possible that the trial court remained skeptical about Mom's continued success after her termination proceedings were over, especially considering R.P.'s strong aversion to reunifying with her. *See May*, 829 S.W.2d at 378. It would have helped our review to have more evidence on this point presented at trial. *See In re D.L.W.W.*, 617 S.W.3d 64, 92 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *In re E.F.*, 591 S.W.3d 138, 149 (Tex. App.—San Antonio 2019, no pet.). But we recognize that the trial court's timeframe to rule on the State's original petition may simply not align with the time needed to be convinced that future drug use is unlikely. *See* TEX. FAM. CODE ANN. § 263.401 (allowing one year to dispose of Department's petition to terminate parental rights); *May*, 829 S.W.2d at 377 (recognizing that "the permissible inference that an adult person's future conduct may well be measured by his recent deliberate past conduct). We can infer from the trial court's statements before closing arguments that it believed the ripple effect of Mom's drug abuse and neglectful supervision necessitated more time to mend trust and to establish the unlikelihood of future drug use. *See id.* Because we are bound to defer to the trial court's implied findings in support of the judgment, we now conclude that the trial court did not abuse its discretion by determining that the parental presumption was overcome. *See Mauldin*, 428 S.W.3d at 265.

### b. Best Interest After the Parental Presumption Is Overcome

The record was clear that R.P. did not want to interact with Mom at the time of trial. *See Holley*, 544 S.W.2d at 371-72. He threatened self-harm, and his therapist agreed that he was not ready to engage with Mom. *See id.* Mom argues that the record is not clear enough about why R.P. felt so strongly about avoiding her. But what we find most persuasive is the trial court's

implied finding that he believed in the gravity of the witnesses' testimony. *See In re C.E.R.*, 2022 WL 17332598, at *4.

Mom argues that the evidence presented at trial of her recovery and stability paired with the family code's requirement for minimal restrictions on a parent's possession or access to their child should result in her possession of and access to R.P. *See* TEX. FAM. CODE ANN. § 153.193; *Holley*, 544 S.W.2d at 371-72. We agree that it seems counterintuitive that a parent could achieve sobriety and succeed in her family plan and still fail to attain reunification with her child. *See C.O.*, 2022 WL 413374, at *9; *Fish*, 2010 WL 5019411, at *9. But considering that 1) the trial court could have believed that Mom's sobriety was not ensured after her termination proceedings concluded and 2) R.P. was reportedly traumatized by past instability with his Mom during her period of drug abuse, we conclude that the trial court acted within its discretion to defer Mom's possession of and access to R.P. to a future time when Mom will have the opportunity to file a motion to modify based on R.P.'s progress reports and her continued stability.

## CONCLUSION

Based on the trial court's broad discretion to determine R.P.'s best interest and the implied findings in support of it, we affirm the trial court's ruling.

Patricia O. Alvarez, Justice